Larry L. **MOSTRONG** and Jennifer G. Mostrong, Plaintiffs and Appellants,

v.

Lee Roy **JACKSON** and Margaret R. Jackson, Defendants and Appellees.

No. 920578–CA.

Court of Appeals of Utah.

Dec. 3, 1993.

---

Richard Waddingham, Delta, for defendants and appellees.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Larry L. and Jennifer G. Mostrong appeal from the trial court's ruling that they are not entitled to rescission of a contract with Lee Roy and Margaret Jackson for the purchase of real property. We affirm.

## FACTS

Lee Roy Jackson and his brother, William, bought the subject property, located near Fillmore, Utah, from Geraldine Kessler, on October 26, 1978. At that time, the only access to the property was a 3/4 mile long dirt lane (the north road) running north of the property. Kessler later sold other parcels of property adjoining this road, reserving a thirty-three foot easement along the north road in each case for road and utility purposes.

Lee Roy and William Jackson subsequently conveyed the property to Lee Roy and his wife, Margaret Jackson. The Jacksons built a house on the land in 1979. At that time Millard County had not yet adopted the Uniform Building Code (UBC), but the Jacksons' building permit provided that construction must conform to all ordinances in Millard County, laws of the State of Utah, and all rules and decisions of the building inspector. The Jacksons did not request a final occupancy permit due to the fact that Millard County did not then employ a building inspector.

Because the north road was almost impassable in bad weather, Lee Roy Jackson obtained permission from a neighbor to the south to build a 1/4 mile cinder based road (the south road) across the neighbor's property that would connect with a dedicated Millard County road. Jackson did not obtain a written or recorded easement for use of this road from the original owner of the neighboring property, and after this owner sold his property to another individual, Ralph

D. David Lambert and Linda D. Barclay, Provo, for plaintiffs and appellants.

Tuckfield, Jackson did not discuss use of the south road with Tuckfield. Nonetheless, the Jacksons continued to use the south road for primary access to their property, with the apparent acquiescence of Tuckfield. They also used the north road occasionally.

In July 1978, Larry and Jennifer Mostrong, California residents at the time, made several visits to inspect the property and initiated negotiations with the Jacksons for purchase of the property. During these visits, Larry Mostrong asked several times about access to the property. Lee Roy Jackson testified that he told Mostrong that legal access was by way of the north road, and that the Mostrongs would have "permissive" use of the south road. Mostrong testified, however, that Jackson said the south road "would always be there" for their use. With respect to the house, Jackson indicated that he had built it himself in conformance with the UBC.

On July 15, 1987, the Mostrongs entered into an earnest money sales agreement with the Jacksons to purchase the property for $65,000. This agreement stated that the Mostrongs would finance the purchase of the property through an FHA loan to be obtained through Zions First National Bank. The Mostrongs applied for both conventional and FHA financing through Zions. Two appraisers inspected the property for Zions and did not identify any problems concerning either access to the property or the construction of the house that would prevent the Mostrongs from qualifying for these loans.

On August 28, 1987, Zions denied the Mostrongs FHA financing due to insufficient verification of income, for the reasons that Mr. Mostrong was self-employed and had not resided in Utah for sufficient time to establish his income. Zions also denied them conventional financing. However, Zions told the Mostrongs that it would be willing to loan them the money in two years if they were able to establish a stable income.

Because both parties still wished to complete the sale, the Jacksons agreed to carry the financing themselves for two years. Pursuant to this revised agreement, the Mostrongs agreed to pay $20,000 as a downpayment on the property, $550 per month for two years, and a balloon payment of the remaining principal and accrued interest at the end of the two year period. The closing took place on September 1, 1987, and was memorialized by a warranty deed from the Jacksons to the Mostrongs and a trust deed note and deed of trust in favor of the Jacksons. The warranty deed included the property's legal description, but did not specifically include any easement or access from either the north or the south. Security Title Company issued a title insurance policy on the property in favor of the Mostrongs. This policy insured against both lack of a right of access to the property and lack of marketable title.

On September 1, 1989, the date the balloon payment was due, Jennifer Mostrong told the Jacksons that she had applied for an FHA loan through First Security Bank, and that this loan was expected to be finalized within four to six weeks. Based upon this information, the Jacksons agreed to extend the date for obtaining financing for an additional three months. In the process of applying for FHA financing from First Security, a question arose about access to the property. To resolve this issue, Security Title obtained a warranty deed from Geraldine Kessler, which conveyed an easement to the north road to the Jacksons. The Jacksons then conveyed this easement to the Mostrongs. These deeds were recorded on January 4, 1990.

On February 12, 1990, the Jacksons offered to continue accepting monthly payments until March 1, 1990 upon certain conditions. The Mostrongs rejected these terms, and a trustee's sale was scheduled for April 4, 1990. The parties negotiated an extension of the sale to May 18, 1990. On May 17, 1990, the Mostrongs paid the Jacksons $5257.37 for accrued monthly payments, attorney fees and costs, and trustee's fees, and the Jacksons extended the time for the trustee's sale for an additional sixty days.

During this period of time, the Mostrongs were negotiating with Valley Central Bank for financing. Valley Central indicated that two conditions would have to be met before financing would be approved. First, documentation would have to be provided of ac-

cess to the property by a county road or deeded easement, and second, the Mostrongs would have to correct certain construction deficiencies with respect to the house. On May 2, 1990, the Mostrongs obtained a deed from Tuckfield for the south road, with delivery conditioned upon acceptance of the road by Millard County as a county road. On May 15, 1990, the Mostrongs received a letter from the Millard County Commission that Millard County would accept the south road as a county road. However, the Millard County attorney apparently told the Mostrongs that the road would be accepted only if the Mostrongs would bring it up to county standards and agree to be responsible for snow removal. The Jacksons, however, produced evidence at trial that the County Commission chose not to follow the county attorney's recommendation. The trial court's findings of fact accepted the Jacksons' version of these events, rejecting the Mostrongs' argument that there were preconditions to the county's accepting the road. Although no road improvements were made, the Mostrongs submitted the county's commitment to Valley Central as part of their loan application.

With respect to the construction deficiencies, the Mostrongs obtained two estimates on the cost of repairing these problems. These estimates were in the amounts of $3212 and $6085. The Jacksons apparently offered to pay for the corrections on two occasions, but, as the trial court found, they received no affirmative response from the Mostrongs.

The Mostrongs made no further attempts to secure financing, and the property was sold at a trustee's sale on September 25, 1990 to the Jacksons for $42,000. The Mostrongs vacated the property and initiated this action against the Jacksons, alleging negligent misrepresentation, breach of contract, and mistake. The Jacksons counterclaimed for damages and attorney fees. After a bench trial, the trial court entered judgment dismissing all claims and ordering both parties to pay their own attorney fees. The court's findings of fact and conclusions of law indicated that there had been no misrepresentations or mistakes and no breach of contract, and that the Jacksons had provided marketable title to the property. The Mostrongs appeal.

## ISSUES

The Mostrongs assert three issues on appeal: (1) Did the Jacksons breach their contractual duty to provide marketable title by failing to provide legal access to the property via either the north or the south road? (2) Did the Jacksons make fraudulent or negligent misrepresentations of material facts with respect to access to the property or the construction of the house? (3) Was there a material unilateral mistake of fact that would justify rescinding the contract?

## STANDARD OF REVIEW

Factual findings made by the trial court will be upheld unless they are clearly erroneous. *In re Estate of Bartell,* 776 P.2d 885, 886 (Utah 1989). Legal conclusions are reviewed for correction of error. *Marchant v. Park City,* 771 P.2d 677, 680 (Utah App. 1989), *aff'd,* 788 P.2d 520 (Utah 1990).

## ANALYSIS

### Marketable Title

The standard form earnest money sales agreement between the parties provided that the Jacksons would provide the Mostrongs with "good and marketable title" to the property. The Mostrongs allege that the lack of legal access to the property precluded the Jacksons from conveying marketable title. Furthermore, the Mostrongs argue that their exposure to litigation, in attempting to obtain legal access to the property, is evidence of the property's unmarketable title. They assert that the Jacksons failed and refused to cure this breach of contract. In addition, they claim they were unable to finance the property because it was "landlocked."

Marketable title is title that "may be 'freely made the subject of resale' and that can be sold at a 'fair price to a reasonable purchaser or mortgaged to a person of reasonable prudence as security for the loan of money.'" *Kelley v. Leucadia Fin. Corp.,* 846 P.2d 1238, 1243 (Utah 1992) (citation omitted). Moreover, marketable title must

be " 'as free from *apparent* defects as from actual defects, one in which there is no doubt involved either as a matter of law or fact. Every title is doubtful which invites or exposes the party holding it to litigation.' " *Brown v. Yacht Club of Coeur d'Alene, Ltd.*, 111 Idaho 195, 722 P.2d 1062, 1065 (Idaho App. 1986) (citation omitted).

The issue of whether marketable title exists may be a question of law or a mixed question of law and fact, depending on the circumstances. *See id.* Determination of the issue is not on the basis of "whether title ultimately might be adjudged free of defects. Rather, it is 'whether a reasonably prudent [person], familiar with the facts and apprised of the question of law involved, would accept the title in the ordinary course of business.' " *Id.* (quoting 77 Am.Jur.2d *Vendor & Purchaser* § 132, at 316 (1975)).

The Mostrongs have cited no cases holding, as a matter of law, that real property lacks marketable title for want of lawful access. We have discovered only one case that discusses legal access in the context of marketable title. In *Sinks v. Karleskint*, 130 Ill.App.3d 527, 85 Ill.Dec. 807, 810, 474 N.E.2d 767, 770 (1985),[1] the court acknowledged that access to a public street may affect the market value of land. However, the court found that because the buyers had actual knowledge of the property's lack of legal access, they could not establish lack of marketable title. *Id.* The court further noted that access problems do not impair the right to possess property and that only defects related to title as guaranteed to the purchaser and affecting market value will render title unmarketable. *Id.*

The Mostrongs failed to establish either factually or as a matter of law that marketable title in this instance necessarily included legal access to the property. First, the Mostrongs presented no evidence indicating that the alleged lack of access affected the market value of the property.[2] More-

over, the record supports the trial court's factual findings that the Jacksons and/or Security Title had obtained legal access to the property via the north road by recorded easements, and, tentatively, through the south road, pending only final arrangements with Millard County. Thus, there was compliance with any duty to convey marketable title by "the seller ... undertak[ing] to cure defects if it can be done in the exercise of reasonable diligence and within a reasonable time." *Kelley*, 846 P.2d at 1243.

In addition, the trial court also found that Jackson told Mostrong that use of the south road was only permissive. Therefore, the Mostrongs were aware that access to a public road via the south road was not legally guaranteed, but was merely permissive. Such actual knowledge, pursuant to the *Sinks* case, prevents a claim of unmarketable title.

The Jacksons further argue that it is not necessary to reach the issue of whether the property must be accessible in order for them to convey marketable title because the parties agreed that title insurance would serve as evidence of marketable title. They note that the parties' earnest money agreement states that if title insurance is elected, the "policy to be issued shall contain no exceptions other than those provided for in said standard form, and the encumbrances or defects excepted under the final contract of sale." The earnest money agreement also states that the "[s]eller agrees to furnish good and marketable title to the property ... *evidenced by a current policy of title insurance in the amount of the purchase price.*" (Emphasis added.) Pursuant to this provision, the Jacksons obtained title insurance from Security Title guaranteeing marketability of title along with a specific guarantee of access to the property.

There appears to be a split of authority on the question of whether providing a title insurance policy fulfills the obligation to

---

1. *Sinks* cited and distinguished *Myerberg, Sawyer & Rue, P.A. v. Agee*, 51 Md.App. 711, 446 A.2d 69 (1982), in which a lawyer had ostensibly guaranteed access.

2. The Mostrongs did present an appraisal in connection with their efforts to obtain financing, which indicated a value less than the purchase price. However, they did not present evidence linking this appraisal to the question of access to the property.

provide good and marketable title. In *Brown*, the Idaho Court of Appeals stated, "Insurable title merely means that property is capable of being insured, not that the title is good or marketable." *Brown*, 722 P.2d at 1065. However, the Nevada Supreme Court has indicated that title insurance may "serve as evidence of marketable title." *Holmby, Inc. v. Dino*, 98 Nev. 358, 647 P.2d 392, 394 (1982); *see also Heider v. Dietz*, 234 Or. 105, 380 P.2d 619, 622 (1963).

We need not decide in this case which line of authority to follow, as marketable title was provided under either theory. If we were to follow those cases stating that the provision of title insurance guaranteeing marketable title fulfills the seller's earnest money agreement obligation, we would find no breach of duty by the Jacksons. However, even if the Jacksons still had an independent duty to provide marketable title, we nevertheless determine that the evidence establishes that they did provide such title. Therefore, the trial court did not err in concluding that, under the circumstances, there was no breach of the obligation to provide marketable title.

Fraudulent or Negligent Misrepresentations

The Mostrongs claim that the Jacksons made fraudulent or negligent misrepresentations regarding both access to the property and construction of the house. In particular, they claim that the Jacksons misrepresented that there was legal access to the property from the north road and an easement for use of the south road. With respect to the house, the Mostrongs claim that the Jacksons misrepresented it as "FHA approved."

■ In order to prevail in an action for fraudulent misrepresentation, the Mostrongs must prove the existence of the following elements:

"(1) That a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that he [or she] had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his [or her] injury and damage."

*Wright v. Westside Nursery*, 787 P.2d 508, 512 (Utah App.1990) (quoting *Pace v. Parrish*, 122 Utah 141, 247 P.2d 273, 274–75 (1952)).

■ With respect to rights of access, the trial court found that there was no basis for a claim of fraudulent or negligent misrepresentation because the Jacksons did not make any false representations. While there was no recorded easement permitting access through the north road, there was legal access through an easement by implication or necessity. *See Ovard v. Cannon*, 600 P.2d 1246, 1247 (Utah 1979) (describing elements of easement by implication or necessity). Security Title subsequently attempted to resolve any lingering question about the legality of the easement by securing and recording warranty deeds for the easement. Further, Lee Roy Jackson testified that he had told the Mostrongs that there was only permissive use of the south road, and the trial court found his testimony to be credible. Determinations of witness credibility are the province of the trial court, and entitled to deference. *Riche v. Riche*, 784 P.2d 465, 467 (Utah App.1989) (citing Utah R.Civ.P. 52(a)).

■ As for the second allegation of fraudulent or negligent misrepresentation, the claim that Lee Roy Jackson told the Mostrongs that the house was "FHA approved," Jackson's testimony at trial was that he had not made any representations beyond the fact that he built the house himself. The trial court chose to believe Jackson's testimony over the Mostrongs' testimony and found no misrepresentations. Again, we defer to the trial court with respect to credibility determinations.

Unilateral Mistake of Fact

■ Parties to a contract are entitled to rescind the contract where one or both are unaware of a condition that goes to the "very heart of the subject matter of the transaction." *Davey v. Brownson*, 3 Wash.App. 820, 478 P.2d 258, 260 (1970). "The rationale for

allowing rescission on the basis of ... mistake is that no contract has in fact been entered, because a meeting of the minds has not occurred." *Cameron v. Benson,* 57 Or. App. 169, 643 P.2d 1360, 1365 (1982), *rev'd on other grounds,* 295 Or. 98, 664 P.2d 412 (1983).

■■■ In order to state a claim for rescission of the contract on the basis of unilateral mistake, the Mostrongs must establish the following elements:

1. The mistake must be of so grave a consequence that to enforce the contract as actually made would be unconscionable.

2. The matter as to which the mistake was made must relate to a material feature of the contract.

3. Generally the mistake must have occurred notwithstanding the exercise of ordinary diligence by the party making the mistake.

4. It must be possible to give relief by way of rescission without serious prejudice to the other party except the loss of his [or her] bargain. In other words, it must be possible to put him [or her] in status quo.

*B & A Assoc. v. L.A. Young Sons Constr. Co.,* 796 P.2d 692, 695 (Utah 1990) (footnote omitted) (citing *John Call Eng'g v. Manti City Corp.,* 743 P.2d 1205, 1209–10 (Utah 1987)).

■■■ The Mostrongs claim that the mistakes of fact concerning the construction of the home and the existence of an easement to the south road are so grave as to make it unconscionable to enforce the contract because they made a substantial down payment on the house and spent additional funds improving the property. They further allege that the fact that they were denied financing based upon access and construction problems demonstrates the materiality of these mistakes.

---

**3.** Because we find that there was substantial evidence to support the trial court's conclusion that financing was reasonably available to the Mostrongs, we do not address the Mostrongs' argument that ability to finance the property was a condition precedent to their obligation to perform on the contract.

**4.** The Mostrongs also argue that there were mutual mistakes of fact concerning access to the

The Mostrongs have not established that the alleged construction deficiencies affected the core of their transaction. The Mostrongs testified that correction of these problems would cost somewhere between $3000 and $6000. This was certainly not a material error in comparison with the total cost of the property, and even if it were, the Jacksons offered to pay for these corrections. In addition, the alleged defects were not pointed out until after the Mostrongs had lived in the house for over two years. These same defects were apparently not an impediment to obtaining financing from Zions when the Mostrongs first purchased the property, nor in discussions with some of the other potential lenders.

■■■ The allegation of mistake concerning the nature of the right to use the south road suffers from the same problems as the claim of mistake regarding construction of the house. Once the county had accepted the south road as a dedicated county road, access to the property was no longer an issue. Additionally, the trial court found that the Mostrongs knew there was only permissive use of the south road, negating the possibility of any mistake regarding legal rights to that road. As the trial court noted, with the access problem corrected and the Jacksons' promise to pay for all construction problems, there were no further obstacles to obtaining financing.[3] Therefore, the mistakes alleged by the Mostrongs were not material and not of so grave a consequence that enforcing the contract would be unconscionable.[4]

## CONCLUSION

The trial court did not err in concluding that the Jacksons conveyed marketable title to the Mostrongs as required by the parties' earnest money agreement. Further, the

---

property and construction of the house and that the trial court should have awarded them attorney fees. Because we find that the Mostrongs have not established the existence of material mistakes of fact in the context of the unilateral mistake analysis, it is also unnecessary to reach this issue. In addition, because of our resolution of other issues, we do not reach the attorney fee issue.

court's findings regarding the absence of fraudulent or negligent misrepresentations or mistake are supported by the evidence and are not clearly erroneous. Finally, the Mostrongs' claim that the property could not be financed is untenable as the testimony was uncontroverted that financing was available to the Mostrongs as of May 15, 1991. For these reasons, we affirm the decision of the trial court.

BENCH and JACKSON, JJ., concur.