**Michael J. CAMPBELL and Theresa M. Campbell, Plaintiffs–Appellees,**

**v.**

**SUMMIT PLAZA ASSOCIATES, a joint venture, Samuel Brown, an individual, Rex W. Martin, an individual, Norman Veta, an individual, Lawrence Levy, an individual, and Leonard Kapelovitz, an individual, Defendants and Third–Party Plaintiffs–Appellants,**

**and**

**RGB, Inc., a Colorado corporation, d/b/a Land Title Guarantee Company of Summit County, Third–Party Defendant–Appellee.**

No. 06CA0688.

Colorado Court of Appeals, Div. II.

Feb. 7, 2008.

Certiorari Denied Sept. 2, 2008.*

* Chief Justice Mullarkey would grant as to the following issues:

Whether Colorado law provides any right of action by an innocent buyer of real property against a seller who knowingly sells landlocked real property without any legal access.

Whether complete lack of legal access to real property, which prevents any use of that real property, is an encumbrance which violates a general warranty deed's unrestricted promise that the real property is transferred without any encumbrances.

Moye, White, LLP, Erik K. Foster, William F. Jones, Denver, Colorado; West, Brown, Huntley & Thompson, P.C., Mark D. Thompson, Breckenridge, Colorado, for Plaintiffs–Appellees.

Hutchinson, Black, and Cook, L.L.C., William D. Meyer, Boulder, Colorado, for Defendants and Third–Party Plaintiffs–Appellants.

Robert W. Reed, LLC, Robert W. Reed, Lakewood, Colorado, for Third–Party Defendant–Appellee.

Opinion by Judge ROTHENBERG.

In this action concerning an implied easement of necessity, defendant, Summit Plaza Associates (SPA), appeals the trial court's (1) summary judgment in favor of third-party defendant, RGB, Inc., doing business as Land Title Guarantee Company of Summit County (Land Title); (2) judgment granting plaintiffs, Michael M. and Theresa J. Campbell, an implied easement of necessity over SPA's property; and (3) judgment finding that SPA breached the contract of sale and warranty against encumbrances and awarding the Campbells damages, attorney fees, costs, interest, and expenses. We reverse the judgment based on breach of contract and warranty and otherwise affirm.

## I. Background

This dispute involves access to a parcel of property in Silverthorne, Colorado, known as Lot 5R. The Campbells bought the lot from SPA, a joint venture, and title to it was insured by Land Title. When the Town of Silverthorne later informed the Campbells that Lot 5R lacked legal access to a public way, they notified Land Title, and it retained attorneys to file this action in the Campbells' name against SPA and the individual joint venturers. The Campbells sought damages, an implied easement by necessity across property owned by SPA, and condemnation pursuant to § 38–1–101, C.R.S.2007.

SPA filed a third-party complaint against Land Title alleging negligent misrepresentation based on Land Title's failure to advise the parties of the defects in the title. The court granted summary judgment in favor of Land Title and dismissed SPA's third-party complaint, and following a bench trial, it awarded the Campbells an easement for access implied by necessity over SPA's property, $63,732 as damages for breach of contract, plus attorney fees, costs, and expenses.

## II. Standard of Review

■■■■ At a bench trial, it is the trial court's duty to assess the evidence and determine the credibility of the witnesses. *See Lacy v. Rotating Prods. Sys., Inc.*, 961 P.2d 1144, 1146 (Colo.App.1998). The credibility of witnesses and the inferences and conclusions to be drawn from the evidence are within the province of the trial court, and its findings will not be disturbed on appeal unless they are manifestly erroneous. *See Deas v. Cronin*, 190 Colo. 177, 179, 544 P.2d 991, 993 (1976).

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *HealthONE v. Rodriguez*, 50 P.3d 879, 887 (Colo.2002). A court must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, in determining whether to grant a motion for summary judgment. C.R.C.P. 56(c). Because summary judgment is a drastic remedy, the nonmoving party is entitled to the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts must be resolved against the moving party. *HealthONE*, 50 P.3d at 887; *Mancuso v. United Bank*, 818 P.2d 732, 736 (Colo.1991).

A material fact is a fact that affects the outcome of the case. *See Sender v. Powell*, 902 P.2d 947, 950 (Colo.App.1995). Whether a material fact exists is a question of law. *See TerraMatrix, Inc. v. United States Fire Ins. Co.*, 939 P.2d 483, 486 (Colo.App.1997).

We review a trial court's order granting summary judgment de novo. *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo.2003).

## III. Easement by Necessity

SPA argues that for several reasons, the trial court erred in granting the Campbells an easement by necessity. We reject those arguments in turn.

### A. Lack of Access

SPA first contends the Campbells failed to prove they were entitled to an easement by necessity because they did not establish that Lot 5R lacked access to a public road. We disagree.

■■■■ An implied easement of necessity arises when the owner of a tract of land conveys part of that tract to another party, leaving either the part conveyed or the part retained without access except over the other part. While implied easements are generally not looked upon with favor by the courts, *Freeman v. Rost Family Trust*, 973 P.2d 1281, 1285 (Colo.App.1999), public policy supports the principle that property should not be rendered unfit for use for lack of access. Thus, when owners sell a portion of their property, it is presumed that they intended to provide access over the retained lands. *Thompson v. Whinnery*, 895 P.2d 537 (Colo. 1995); *Freeman*, 973 P.2d at 1285.

Although a way of necessity is sometimes confused with an easement arising, on severance of title, from a pre-existing use, there is a definite distinction between them, mainly because a way of necessity does not rest on a pre-existing use but on a need for a way across the granted or reserved premises. A way of necessity is an easement arising from an implied grant or implied reservation; it is of common-law origin and is supported by the rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation. Such a way is the result of the application of the presumption that whenever a party conveys property, he conveys whatever is necess[ary] for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses. Thus, the legal basis of a way of necessity is the

presumption of a grant arising from the circumstances of the case. This presumption of a grant, however, is one of fact, and whether a grant should be implied depends upon the terms of the deed and the facts in each particular case.

A way of necessity arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is entirely surrounded by the land from which it is severed or by this land and the land of strangers. It is a universally established principle that where a tract of land is conveyed which is separated from the highway or by other lands of the grantor or surrounded by his lands or by his and those of third persons, there arises, by implication, in favor of the grantee, a way of necessity across the premises of the grantor to the highway. In other words, if one grants a piece of land in the midst of his own, he thereby impliedly grants a way to reach it. Conversely, if one conveys a part of his land in such form as to deprive himself of access to the remainder unless he goes across the land sold he has a way of necessity over the portion conveyed.

*Martino v. Fleenor*, 148 Colo. 136, 139–40, 365 P.2d 247, 249 (1961) (quoting 17a Am.Jur. 668, *Easements* § 58); *see Thompson*, 895 P.2d at 540; *Wagner v. Fairlamb*, 151 Colo. 481, 486, 379 P.2d 165, 168 (1963).

■ Three requirements must be met to establish an implied easement of necessity for access to land: (1) there must be unity of ownership of the entire tract prior to severance, meaning that the original ownership of the entire tract must have been held by a single grantor prior to a division thereof; (2) the necessity for the easement must exist at the time of severance; and (3) the necessity for the easement must be great. *See Collins v. Ketter*, 719 P.2d 731, 733 (Colo.App.1986).

■ The burden of proving the existence of an implied easement of necessity is on the party claiming the easement. *Thompson*, 895 P.2d at 540; *Freeman*, 973 P.2d at 1285.

■ A party seeking an easement of necessity must show a practical inability to have access other than by way of necessity.

Although absolute physical impossibility of reaching the alleged dominant estate is not a requisite, an easement by implication will not be found if there are alternatives offering reasonable means of ingress and egress. *LeSatz v. Deshotels*, 757 P.2d 1090, 1092 (Colo.App.1988)(owner of landlocked property was not entitled to easement by implication where he could obtain license for construction of foot or vehicular bridge and where he was aware, by record notice, of lack of preferred access at time of purchase of land).

■ "The critical time in determining the existence of an easement by necessity is the time when the dominant estate is severed from the servient estate." *Hurlocker v. Medina*, 118 N.M. 30, 33, 878 P.2d 348, 351 (N.M.Ct.App.1994) (citing *Herrera v. Roman Catholic Church*, 112 N.M. 717, 720, 819 P.2d 264, 267 (N.M.Ct.App.1991)).

■ Here, the trial court found, with record support, that the Campbells' property was landlocked. An agent of Land Title testified that a search of public records revealed no document permitting express access to Lot 5R, and the Town of Silverthorne concluded there was no access to it. The trial court also reviewed the relevant plats and the title documents and found that they were "access neutral" because there was no evidence of the existence or nonexistence of access to the property. The court stated:

> [T]he Campbells have ... established by [a] preponderance of the evidence that Lot 5R is landlocked, but for its shared boundary with property retained by SPA. At the time of conveyance, and thus severance, Lot 5R was surrounded on three sides by land owned by third parties, and on the fourth side by Lot 4R retained by SPA.

We therefore conclude there is record support for the trial court's finding that Lot 5R had no access to a public road.

## B. Public Road

SPA next contends the easement decreed by the court has never been used, is physically impracticable, and does not connect with a public road. We disagree.

It is undisputed that (1) the easement awarded to the Campbells crosses over property owned by SPA when it sold Lot 5R to them, including Lots 3, 4R, and Tract C of Summit Park Commercial; and (2) the easement terminates at the common boundary of Lot 3 and Meraly Way, which is a private road controlled, managed, and maintained by a landowners' association.

■ SPA maintains that because the easement terminates at Meraly Way, it does not connect with a public road. However, the trial court found otherwise, relying partly on the plat notes of Summit Park and Summit Park Commercial and the fact that Lot 5R enjoys express access over Meraly Way to a public right of way.

We therefore conclude there is record support for the trial court's finding that an implied easement was necessary to permit the owners of Lot 5R to traverse SPA's retained lands to access Meraly Way, which intersects with a public road.

■ In any event, the "public road" requirement is generally found in cases involving the common law right of access. To show such a right, parties only need to prove their land abuts a public highway. *See Sebree v. Bd. of County Comm'rs*, 251 Kan. 776, 785, 840 P.2d 1125, 1132 (1992) (discussing the difference between the common law right of access and an easement by way of necessity).

■ The common law right of access has two elements: (1) there must be a public street or highway, and (2) the persons claiming the right must own land abutting that street or highway. *Spurling v. Kansas State Park & Res. Auth.*, 6 Kan.App.2d 803, 804, 636 P.2d 182, 183 (1981). The right of access is justified upon the grounds of necessity and is an appurtenant easement which runs with the land. *Riddle v. State Highway Comm'n*, 184 Kan. 603, 610, 339 P.2d 301, 308 (1959). We have already discussed the requirements of an easement by necessity.

### C. Unity of Ownership

■ SPA next contends the Campbells failed to show there was unity of ownership of the entire tract prior to severance because the parcels involved here were never part of a single tract and therefore could not be severed. We disagree.

Whether the unity requirement is satisfied if the grantor owns separate but contiguous parcels before conveying one of them is an issue of first impression in Colorado, and there is a split of authority in the few jurisdictions that have addressed the issue.

In *Koonce v. Brite Estate*, 663 S.W.2d 451 (Tex.1984), a husband and wife were the original owners of a 10–acre parcel of land. The wife and a third party also owned a 284–acre parcel as tenants in common. When the wife died, the husband became the sole owner of the 10–acre parcel, and he also inherited her undivided one-half interest in the 284–acre parcel. Thereafter, he took her interest in the 284 acres and partitioned it between himself and the third party into two 142–acre parcels.

The lawsuit arose when the husband died, and his estate sought a declaratory judgment establishing an implied easement by necessity for the 10–acre parcel which crossed the third party's 142–acre parcel. The Texas Supreme Court concluded the estate was not entitled to such an easement because there was no evidence the 10–acre parcel and the larger parcel were owned as a unit by the same owner, and therefore, the estate had failed to establish unity of ownership.

However, in *Hurlocker v. Medina*, the New Mexico Court of Appeals adopted the rationale of the Restatement of Property and reached a different conclusion. The court reasoned:

Servitudes by necessity arise only on severance of rights held in a unity of ownership. This severance can take place when a grantor, who owns several parcels, conveys one or more to others. It can also take place when a grantor divides a single parcel into two or more parcels, and it can take place when a grantor conveys less than full ownership in a single parcel.

118 N.M. at 33, 878 P.2d at 351 (quoting tentative draft of Restatement (Third) of Property: Servitudes § 2.15 cmt. c (2000)).

The trial court in this case acknowledged the split of authority and concluded *Hurlocker* was more in accord with Colorado law:

[*Hurlocker*] is consistent with the well founded Colorado public policy against land locking parcels, and implicitly recognizes the modern reality, which is clearly evident in this case, that tracts and parcels are frequently assembled, divided, redivided, renamed and shuffled about in order to facilitate development, and that ownership and its attendant rights are what is important, not lot arbitrary divisions or identifiers.

The trial court added:

Colorado courts have not specifically addressed the issue of whether an easement by necessity arises where a grantor owns contiguous, but separately described parcels prior to a conveyance which leaves one landlocked. The New Mexico Court of Appeals has, however, concluded that an easement by necessity may arise in such circumstance and that common ownership of lands is determinative of the issue. *Hurlocker v. Medina*, [118 N.M. 30,] 878 P.2d 348 (N.M.App.1994); *see also Dixon v. Feaster*, 448 So.2d 554, 557–58 (Fla.Dist. Ct.App.1984); *Traders, Inc. v. Bartholomew*, 142 Vt. 486, 459 A.2d 974, 978–79 (1983). The court finds these cases persuasive.

The *Hurlocker* case involved two contiguous parcels of land that were previously divided, but in common ownership prior to the conveyance which left one of the parcels landlocked. The Court in *Hurlocker* held that unity of title does not require the dominant and servient estate to be carved out of a previously undivided single parcel. In reaching this conclusion, the Court noted the rationale set forth in what is now RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES, § 2.15, Comment c (2003), which recognizes that ownership, not lot divisions, is the key element when considering unity of title and a subsequent severance.

■ We are persuaded by this reasoning, and we therefore hold that the unity requirement is satisfied if the grantor owns separate but contiguous parcels before conveying one of them.

## D. Severance

■ SPA next contends the trial court erred in finding the second requirement of an easement by necessity was met, which is that the necessity for the easement must exist at the time of severance. According to SPA, there was no severance because Lot 5R was never part of a single larger tract including Lots 3, 4R, and Tract C. We disagree.

Although no published opinion in Colorado appears to have defined "severance" in this context, our courts have required a showing of necessity "as of the time of severance of the original property into separate estates, because it is an indication of the intent of the original grantor and grantee that a permanent servitude be imposed on the servient estate in favor of the dominant estate." *Bromley v. Lambert & Son, Inc.*, 752 P.2d 595, 596 (Colo.App.1988).

The trial court here found the severance requirement was satisfied, stating:

[T]he dominant estate, Lot 5R, was severed [up]on conveyance by SPA to the Campbells. At the time of such conveyance by SPA, Lot 5R did not directly abut a public way, [it] was surrounded by property owned by third parties, except along its common boundary with Lot 4R which was retained by SPA, and no easement existed across Lot 3, 4R or Tract C property to provide access directly to and from Lot 5R and a public way.

Therefore, the trial court did not err in finding a severance occurred at the time SPA conveyed Lot 5R to the Campbells, and the necessity for the easement existed at the time of the severance.

## E. Necessity

■ We further conclude the trial court did not err in finding that the Campbells established the necessity for the easement. The trial court found that (1) the Campbells had purchased Lot 5R for commercial development; (2) they established that the lot is landlocked but for its shared boundary with the property retained by SPA; (3) they were

unable to negotiate access to their lot over any of the other adjacent property; (4) without access, the Town of Silverthorne was unwilling to consider development of the lot; (5) the lack of access constituted a severe economic hardship to the Campbells and rendered the parcel useless; and (6) this was contrary to public policy. The court rejected SPA's argument that the easement was impassable or impractical based on the topography of the land it traversed. Therefore, there is record support for the trial court's finding that the Campbells satisfied the necessity requirement.

For these reasons, we conclude the trial court did not err in awarding the Campbells an easement by necessity.

## IV. Breach of Warranty

SPA next contends the trial court erred in concluding it breached the covenant against encumbrances in its warranty deed to the Campbells. We agree.

 Conveyances of real estate are deemed to be in fee simple unless expressly limited. § 38–30–107, C.R.S.2007. A good title in fee simple means the legal estate is in fee, free and clear of all claims, liens, and encumbrances whatsoever, except as listed in the deed. *See O'Brien v. Vill. Land Co.*, 794 P.2d 246, 249 (Colo.1990); *Ford v. Summertree Lane Ltd. Liab. Co.*, 56 P.3d 1206, 1209 (Colo.App.2002); *Upton v. Griffitts*, 831 P.2d 504, 505 (Colo.App.1992); *Feit v. Donahue*, 826 P.2d 407, 409 (Colo.App.1992); *see* 11 *Couch on Insurance* § 159:59 (3d ed. Dec. 2007) ("The ability to access a parcel of real estate can obviously affect the marketability of the property in terms of how much a buyer would pay for it, but is not technically a 'defect' in the title to the property.").

Deeds frequently include warranties by the grantor, including a warranty that the property is free from encumbrances.

> Encumbrances may take a variety of forms but include mortgages and liens, tax liabilities, easements, reservations and reversionary interests, leases, severed mineral rights or other interests, and certain existing zoning violations. If the deed includes a warranty that the property is free from

encumbrances, any encumbrances on the grantor's title should be specifically listed and excluded from the warranty or the grantor will be in breach of the warranty.

2 Cathy S. Krendl, *Colorado Methods of Practice* § 64.25 (2007 update). As one leading authority has stated:

> Many of the cases involving alleged breach of this covenant [against encumbrances] come down to the question of how the term "encumbrance" is defined. The more recent cases define "encumbrance" as any right or interest in land subsisting in a third person, to the diminution of the value of the land, not inconsistent with the passing of fee simple title.

9 G. Thompson, *Real Property* § 82. 10, at 612 (1999).

In *Feit,* a division of this court defined an encumbrance to include "any burden resting not only on the title to the real estate, but on the real estate itself which tends to lessen the value or interfere with its free enjoyment." *Feit,* 826 P.2d at 410 (quoting 7 G. Thompson, *Real Property* § 3182, at 272 (1962)). The trial court here applied that definition and ruled that Lot 5R's total lack of access lessened its value and therefore constituted an encumbrance. The trial court stated:

> *[A] total lack of access is a burden on the property which inhibits its free use and diminishes its value.* As stated in the Restatement (Third) of Property, "Access rights are almost always necessary to the enjoyment of property. In a conveyance that would otherwise deprive the owner of access to property, access rights will always be implied, unless the parties clearly indicate they intend a contrary result.... The exception language in the Warranty Deed refers to a specific attachment, "A," which is virtually identical to the exceptions in the Title Commitment (Ex. 17). Again, the testimony of [the agent from Land Title] was that an examination of these documents indicates that access was neither expressly given, nor denied. Under these circumstances, the court cannot conclude that the deed expressly or intentionally excluded access. Therefore, since there is no access, the court finds and

*concludes that there has been a breach of the covenant in the Warranty Deed against such encumbrances.*

(Emphasis added.)

However, *Feit* must be considered in context. The division there did not address whether a lack of access constituted an encumbrance or cite to any cases involving a lack of access. The issue was whether a zoning violation which existed at the time of the conveyance constituted an encumbrance. Thus, the burden placed on the property in that case arose from a right or interest in land of a third party (the city). *See* 9 G. Thompson, Real Property § 82.10 at 612 (1999); *Troy v. Hart,* 116 Md.App. 468, 475, 697 A.2d 113, 116 (1997) (while there is no precise definition of an encumbrance, "the term logically includes a withholding of a right or interest in property to a third party."); *Hughes v. Young,* 115 N.C.App. 325, 330, 444 S.E.2d 248, 251 (1994)("An encumbrance is a 'claim, lien, charge, or liability attached to and binding real property.' ")(quoting Black's *Law Dictionary* 473 (5th ed.1979)). In this case, however, no third party is claiming a right or interest in Lot 5R.

The *Feit* division also acknowledged that it was departing from the authorities which "nearly uniformly hold that the sale of a property with structures built in violation of a building code is not a breach of the covenant against encumbrances." *Feit,* 826 P.2d at 411. Nevertheless, the division concluded the case before it was factually distinguishable because "the zoning violation required major structural alterations or removal in order to comply with the zoning law. It required either the destruction and rebuilding of part of the existing house or the completion of an entirely new garage on the property." *Id.* The division discussed the devastating effect of the zoning violation on the property's marketability:

> [I]t is undisputed that the house was sold with an existing zoning violation which eventually resulted in the revocation of the certificate allowing occupancy. The city, by ordinance, had the right to enter upon the property and physically conform the property to the zoning requirements without permission of the buyers and at their expense. Moreover, the city by court action could require buyers to build the garage. And, the undisputed evidence was that buyers unsuccessfully attempted to obtain a variance and ultimately could not even list the property for sale because it had no certificate of occupancy. Hence, at minimum, as confirmed by subsequent events, the title conveyed to buyers with the existing zoning violation was unmarketable.

> Under these circumstances, we hold that the requirement which existed at the time of conveyance that a garage be built to conform to zoning laws constituted an encumbrance.

*Id.* at 410.

*Mostrong v. Jackson,* 866 P.2d 573, 577–78 (Utah Ct.App.1993), is one of the only published cases we have found that has addressed whether sellers breached their contractual duty to buyers to provide marketable title by failing to provide legal access to the real property. The court stated:

> The issue of whether marketable title exists may be a question of law or a mixed question of law and fact, depending on the circumstances. Determination of the issue is not on the basis of "whether title ultimately might be adjudged free of defects. Rather, it is 'whether a reasonably prudent [person], familiar with the facts and apprised of the question of law involved, would accept the title in the ordinary course of business.' "

> *The [buyers] have cited no cases holding, as a matter of law, that real property lacks marketable title for want of lawful access. We have discovered only one case that discusses legal access in the context of marketable title.*

*Id.* at 578 (emphasis added; citations omitted) (quoting *Brown v. Yacht Club, Ltd.,* 111 Idaho 195, 722 P.2d 1062, 1065 (Ct.App. 1986)). The Utah court ultimately concluded the buyers had "failed to establish either factually or as a matter of law that marketable title in this instance necessarily included legal access to the property." *Id.*

The other case referred to by the court in *Mostrong* is *Sinks v. Karleskint*, 130 Ill. App.3d 527, 530, 85 Ill.Dec. 807, 474 N.E.2d 767, 770 (1985), and its holding was narrow. The court in *Sinks* acknowledged that access to a public street may affect the market value of land, but found that because the buyers had actual knowledge of the property's lack of legal access, they could not establish lack of marketable title. The *Sinks* court stated:

> [M]erchantability does not equate with market value or marketability. Numerous factors may affect the market value of land and unquestionably access to a public way is such a factor; however, if the title is secure against defects in the statutory warranties, the title is merchantable. It is only defects in title affecting market value that result in unmerchantability.

*Id.*

The *Sinks* court said the following about the buyer's alleged lack of access:

> "[T]he covenant of quiet enjoyment ... is synonymous with the covenant of warranty in Illinois. By this covenant, 'the grantor warrants to the grantee, his heirs and assigns, the possession of the premises and that he will defend the title granted by the terms of the deed against persons who may lawfully claim the same....'"

> [Buyers] do not argue that they do not have the right to possession of the premises or that anyone has a superior right to possession. The covenant of quiet and peaceable possession is broken when the covenantee is evicted, actually or constructively, by the paramount title holder. *Lack of access does not defeat their right to possession.*

> . . . .

> Even were we to equate lack of access with a title defect, a purchaser of real estate who enters into a contract with actual knowledge of title defects in the form of easements or encumbrances, waives any objection to those defects.

*Id.* (emphasis added)(quoting *Brown v. Lober*, 75 Ill.2d 547, 551–52, 27 Ill.Dec. 780, 389 N.E.2d 1188, 1191 (1979)).

■ Accordingly, while we accept the court's finding that Lot 5R was landlocked, we have found no case in the country, and counsel has not cited any, holding that the lack of access to real property constitutes an "encumbrance" and therefore violates the covenant against encumbrances in a general warranty deed. Hence, we conclude the trial court erred in finding SPA breached the covenant against encumbrances in its warranty deed to the Campbells.

### V. Breach of Contract

We also agree with SPA's related contention that the trial court erred in finding it breached its contractual obligation to transfer the property to the Campbells without encumbrances.

■ In reviewing a breach of contract claim, we defer to the trial court's findings of fact if the record supports them but review its conclusions of law de novo. *Albright v. McDermond*, 14 P.3d 318, 322 (Colo.2000).

■ To recover for breach of contract, a plaintiff must prove (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages. *City of Westminster v. Centric–Jones Constructors*, 100 P.3d 472, 477 (Colo.App.2003).

Paragraph 12 of the contract at issue here provides:

> Subject to tender or payment at closing as required herein and compliance by Buyer with the other terms and provisions hereof, Seller shall execute and deliver a good and sufficient GENERAL WARRANTY deed to Buyer.... Title shall be conveyed free and clear of all liens for special improvements installed as of the date of Buyer's signature hereon, whether assessed or not; except (i) distribution utility easements (including cable TV), (ii) those matters reflected by the Title Documents accepted by Buyer in accordance with subsection 9(a), (iii) those rights, if any, of third parties in the Property not shown by the public records in accordance with subsection 9(b)....

It is undisputed that a contract existed between the parties and that when Lot 5R was transferred to the Campbells, it was landlocked. Thus, the resolution of this claim turns on whether SPA's conveyance of Lot 5R by warranty deed included the obligation to transfer it with legal access.

The trial court concluded as a matter of law that SPA's obligation to transfer Lot 5R by general warranty deed constituted "an unrestricted promise" by SPA "that Lot 5R would have no encumbrances, such as lack of access." The court stated:

The source of this promise is paragraph 12 of the Contract [and] the Court finds that SPA had a legal obligation to transfer Lot 5R pursuant to a general warranty deed. The Court finds that there are no provisions of the contract which limit or otherwise restrict SPA's contractual obligation to transfer Lot 5R by a general warranty deed without any restriction on access. Since Lot 5R was transferred without access at all, SPA breached its contractual obligation to transfer Lot 5R pursuant to a general warranty deed.

The trial court's conclusion that SPA breached its contract with the Campbells is factually and legally inseparable from its conclusion that SPA breached its warranty against encumbrances, because the court relied on the same facts, documents, and rationale. Furthermore, the provisions of a contract for the sale of real estate merge at closing into the deed. *See Feit,* 826 P.2d at 412. Thus, the rights of the parties are determined by the covenants in the deed rather than by the language of the contract. *Skidmore v. First Bank,* 773 P.2d 587, 589 (Colo.App.1988).

Given our conclusion that SPA did not breach its warranty because the lack of access to the lot was not an encumbrance, we similarly conclude SPA did not breach its contract with the Campbells.

In view of our conclusions, we need not address SPA's additional contentions that the breach of contract and breach of warranty claims were barred by the statute of limitations, that waiver and estoppel precluded the Campbells from enforcing the contract, and

that they did not prove their damages were caused by the alleged breach of contract.

## VI. Damages, Fees, and Costs

At the conclusion of the trial, the court found that the Campbells were the prevailing parties under the contract and awarded them damages based on subsection 18(c) of the contract, which provides for an award of attorney fees and reasonable costs and expenses to the prevailing party. That subsection states:

COSTS AND EXPENSES. Anything to the contrary herein notwithstanding, in the event of any arbitration or litigation arising out of this contract, the arbitrator or court shall award to the prevailing party all reasonable costs and expenses, including attorneys fees.

*See Bedard v. Martin,* 100 P.3d 584, 593 (Colo.App.2004) (defining the phrase "arise out of"); *Roberts v. Adams,* 47 P.3d 690, 697–98 (Colo.App.2001) (same). The damages awarded included (1) $3,899.90 that the Campbells paid to the Town of Silverthorne for development which did not occur because of the lack of access to the property, and (2) $59,832 in mortgage interest they paid on the property from the date construction on it was to begin until the trial date, which the Campbells contended resulted from their inability to develop the property. The court also awarded them attorney fees and costs.

However, because we have concluded that SPA did not breach the contract and warranty with the Campbells, we reject the trial court's finding that the Campbells prevailed in this lawsuit. Hence, we vacate the order awarding them damages, attorney fees, and costs under the fee-shifting provision in the contract. *See Giguere v. SJS Family Enters., Ltd.,* 155 P.3d 462, 474 (Colo.App. 2006); *Brock v. Weidner,* 93 P.3d 576, 579 (Colo.App.2004). SPA has not requested attorney fees or costs.

## VII. Negligent Misrepresentation

The trial court granted summary judgment in favor of Land Title on all third-party claims, but SPA appeals only the court's ruling on the negligent misrepresentation claim. SPA contends the trial court erred in

granting summary judgment on that claim. We disagree.

■ To prevail on a claim for negligent misrepresentation against Land Title, SPA was required to prove that (1) Land Title supplied false information in a business transaction; (2) it failed to exercise reasonable care or competence in obtaining or communicating that information; and (3) SPA justifiably relied upon the false information. *Bedard,* 100 P.3d at 592.

Here, pursuant to the contract for the sale of Lot 5R, Land Title issued a commitment to insure the title and after the closing, it issued a title insurance policy to the Campbells. The Campbells contacted Land Title when they discovered they lacked access to the property, and SPA also filed a third-party action against Land Title, alleging that it was liable to SPA based upon the title insurance commitment.

■ In *Jimerson v. First American Title Insurance Co.,* 989 P.2d 258 (Colo.App.1999), a division of this court held that a title insurer owes no contractual obligation to a vendor of real property by virtue of the title commitment or title insurance policy issued to the buyer. Because there is no contractual arrangement between the vendor and title insurer, a vendor may not enforce obligations established by the title commitment and claim negligence in the title insurer's performance. The division stated:

> Under seller's allegations, it is clear that he had assumed the obligation to convey good title to the buyer before the title commitment was issued by the title company. His later conveyance by warranty deed was simply the fulfillment of his previously assumed obligation....

*Id.* at 261.

Relying on *Jimerson,* the trial court here concluded there was no genuine issue of material fact in this case:

> SPA assumed the obligation to provide access to the property before any representations to that effect could have possibly been offered by [Land Title]. Consequently, the Court concludes as a matter of law that SPA cannot prove it justifiably relied on any information, which might

have been provided by [Land Title] regarding access to Lot 5R.

■ We agree that *Jimerson* is dispositive, and that SPA could not have relied upon the title commitment because it assumed the obligation to convey good title to the Campbells before the title commitment was issued by the title company. Accordingly, the trial court did not err in granting summary judgment on the negligent misrepresentation claim in favor of Land Title.

The portion of the judgment finding that SPA breached the contract and warranty with the Campbells is reversed, as is the award of damages, attorney fees, interest, and costs. The remainder of the judgment is affirmed.

Judge CASEBOLT and Judge ROMÁN concur.