R. James GIGUERE; Margarete T. Giguere; Dr. Fielding Fromberg; Flossie Fromberg; Fromberg Family 1999 Trust; Dr. Victor E. Pollak; N. Ann Pollak; Harlow Sprouse; Jerre Sprouse; and St. Anton Condominium Association, Plaintiffs–Appellants and Cross–Appellees,

v.

SJS FAMILY ENTERPRISES, LTD., Defendant–Appellee and Cross–Appellant.

No. 04CA0947.

Colorado Court of Appeals, Div. V.

Aug. 10, 2006.

As Modified on Denial of Rehearing Sept. 28, 2006.

Frey Korb Haggerty & Michaels, P.C., Mark L. Korb, Fort Collins, Colorado; Sprouse Shrader Smith, P.C., Harlow Sprouse, Amarillo, Texas, for Plaintiffs–Appellants and Cross–Appellees.

Carpenter & Klatskin, P.C., Willis Carpenter, Judith C. McNerny, Robert R. Marshall, Jr., Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge WEBB.

In this land use dispute, plaintiffs, R. James and Margarete T. Giguere; Dr. Fielding and Flossie Fromberg; Fromberg Family 1999 Trust; Dr. Victor E. and N. Ann Pollak; Harlow and Jerre Sprouse; and St. Anton Condominium Association, appeal and defendant, SJS Family Enterprises, Ltd., cross-appeals the trial court's order enjoining any construction outside of the original building envelope on Lot 2A, owned by defendant. Plaintiffs appeal the trial court's later order

dissolving the injunction. Both parties also appeal the trial court's order declining to award attorney fees. We affirm in part, reverse in part, and remand with directions.

Plaintiffs own four condominium units on the lot adjoining Lot 2A in the Windcliff Estates Fifth Subdivision in Estes Park. Windcliff's Amended Declaration of Covenants, signed in 1977, provides:

All numbered lots, with the exception of the Common Area and Lots which contain a "building and access envelope" as shown on the plat of the properties, shall be used for not more than one single-family residential living unit each. All lots shown on said plat containing building and access envelopes may be used for not more than the number of residential living units shown on each of such lots.

In 1991, the Larimer County Board of County Commissioners approved an amended plat that subdivided Lot 2 into two separate lots, Lot 2A and Lot 2B. The original plat had allocated five residential living units to Lot 2. The amended plat allocated four units to Lot 2A and one unit to Lot 2B. As a part of this amended plat, the building and access envelope on Lot 2A was eliminated, bringing the buildable area, based on setback lines and utility easements, closer to plaintiffs' condominiums.

Defendant applied to the Architectural Control Committee (ACC) of the Alpine Meadow Homeowners Association (HOA) to construct four residential living units on Lot 2A, within the setback lines and utility easements. The ACC approved the application. Plaintiffs appealed to the HOA's Board of Directors.

The Board reversed the ACC's approval, concluding that the original building and access envelope still applied to Lot 2A because the 1991 amended plat had not been signed by three-fourths of Windcliff's lot owners, as required by the Declaration. But the Board also said that it would reconsider its decision if the parties obtained "a declaratory judgment from the District Court" on this issue.

Defendant then filed a development plan application for Lot 2A with the Estes Park Community Development Department based on the setback lines and utility easements. The Department approved the plan, stating that "the submitted application complies with applicable sections of the Estes Valley Development Code, as well as the amended plat approved by the Board of County Commissioners in 1991." The Department observed that the Board had not approved the plan, but stated "these are private issues and not in the purview of the [town]." Finally, the Department stated that "building permits may now be issued," which defendant obtained thereafter.

Defendant's counsel then sent a letter to plaintiffs' counsel, stating: "Please be advised that our client will commence construction of improvements on Lot 2A at any time after 8:00 a.m. Friday, July 18, 2003, pursuant to building permits issued by Larimer County. Please notify your clients accordingly." About this time, defendant removed some trees from the lot.

Plaintiffs filed this action on October 15, 2003, seeking a declaratory judgment that defendant could not develop Lot 2A because, by removing the original building and access envelope, the amended plat had converted it into a single family residence lot and such a residence had already been built on Lot 2B. Alternatively, plaintiffs sought a declaration that defendant's development was subject to the original building and access envelope. They requested an injunction enforcing whichever determination the trial court reached. Defendant suspended construction subject to the outcome of the case.

On cross-motions for summary judgment, the court rejected plaintiffs' assertion that Lot 2A could not be developed. The trial court agreed with the Board that the 1991 amended plat was invalid because it had never been approved by three-fourths of the Windcliff lot owners, and thus, defendant's planned construction must stay within the original building and access envelope. The court enjoined any construction outside of that envelope.

The parties filed motions to amend the judgment to recover attorney fees and costs. The court denied both motions, finding that "this case involved a determination of the proper construction of the Windcliff Estates

covenants, rather than their enforcement ... [and] neither party can be said to have prevailed over the other, in any technical or practical sense."

Following the trial court's decision, and while this appeal was pending, more than three-fourths of the Windcliff lot owners signed a Ratification Agreement approving the 1991 amended plat of Lot 2A, as well as various other changes—such as changes to setbacks, building and access envelopes, easements, and lot boundaries—on all but two lots: plaintiffs' lot, which had already been built out, and a lot that could not be built on because it was reserved as a common area.

A motions division of this court remanded, at defendant's request, so that the trial court could consider the Ratification Agreement. Before the trial court, defendant then moved to dissolve the injunction based solely on the language of the Ratification Agreement, without reference to the Colorado Common Interest Ownership Act (CCIOA), § 38-33.3-101, et seq., C.R.S. 2005.

Plaintiffs responded, arguing as they do on appeal, only that based on cases in other states less than 100% of lot owners cannot remove restrictions on some, but not all, lots in the development.

In reply, defendant relied on certain provisions of CCIOA. Plaintiffs neither objected that defendant had raised a new argument nor sought leave to file a surreply addressing CCIOA.

The trial court then dissolved the injunction, concluding that under the Colorado Common Interest Ownership Act (CCIOA), § 38-33.3-101, et seq., C.R.S.2005, the Ratification Agreement validly amended the Declaration and thus changed the building and access envelope on Lot 2A. Plaintiffs did not seek reconsideration based on their constitutional argument.

### I.

Plaintiffs first contend the trial court erred in dissolving the injunction based on the Ratification Agreement. According to plaintiffs, the Ratification Agreement did not constitute a valid amendment to the Declaration. be-

cause it affected less than all the lots but was not approved by all the lot owners. We agree with the trial court that under CCIOA, the Ratification Agreement validly eliminated the building and access envelope on Lot 2A.

Statutory interpretation is a question of law that we review de novo. *Ryals v. St. Mary–Corwin Reg'l Med. Ctr.,* 10 P.3d 654 (Colo.2000). Courts have a fundamental responsibility to interpret statutes to effect the General Assembly's intent, giving the words in the statute their plain and ordinary meaning. *Golden Animal Hosp. v. Horton,* 897 P.2d 833 (Colo.1995). We accept the intent of the drafters of a uniform act as the General Assembly's intent when it adopts that uniform act. *Copper Mountain, Inc. v. Poma of Am., Inc.,* 890 P.2d 100 (Colo.1995).

In 1991, the General Assembly enacted CCIOA based on the Uniform Common Interest Ownership Act (1982) (Uniform Act). CCIOA is intended "to establish a clear, comprehensive, and uniform framework for the creation and operation of common interest communities." Section 38–33.3–102(1)(a), C.R.S.2005. Windcliff is such a community. Except as expressly provided for in § 38–33.3–117, C.R.S.2005, however, CCIOA does not apply to common interest communities created before July 1, 1992.

Section 38–33.3–117(1)(f), C.R.S.2005, applies § 38–33.3–120, C.R.S.2005, which covers amendments to governing instruments, to preexisting communities. The latter section states in pertinent part:

(1) In the case of amendments to the declaration ... of any [preexisting] common interest community ...:

(a) If the substantive result accomplished by the amendment was permitted by law in effect prior to July 1, 1992, the amendment may be made either in accordance with that law, in which case that law applies to that amendment, or it may be made under this article; and

(b) If the substantive result accomplished by the amendment is permitted by this article, and was not permitted by law in effect prior to July 1, 1992, the

amendment may be made under this article.

However, this section also provides:

> (2) An amendment to the declaration ... made under this article must be adopted in conformity with the procedures and requirements of the law that applied to the common interest community at the time it was created and with the procedures and requirements specified by those instruments.

Section 38–33.3–120 is substantially similar to § 1–206 of the Uniform Act. A comment to a related section of the Uniform Act states:

> [U]nder section 1–206, owners of "old" common interest communities may amend any provisions of their declaration or bylaws, even if the amendment would not be permitted by "old" law, so long as (a) the amendment is adopted in accordance with the *procedure* required by "old" law and the existing declaration and bylaws, and (b) the *substance* of the amendment does not violate this Act.

Section 1–204 cmt. 2 (emphasis added). Another comment explains that "it is important to distinguish between the law governing the procedure for amending declarations, and the substance of the amendments themselves." Section 1–206 cmt. 2.

Here, the Ratification Agreement was intended, in part, to approve the 1991 amended plat eliminating the building and access envelope on Lot 2A.

Plaintiffs argue that because the 1991 amended plat affects only some of the lots in Windcliff, it must be approved by all the owners. According to plaintiffs, because development restrictions uniquely impact adjoining lots, such restrictions should not be changed on only certain lots, based on approval by a majority or even a supermajority of owners, many of whose lots may not be impacted by the change. We are not persuaded.

As directed by the above-quoted Uniform Act comments, we consider the Ratification Agreement's validity as a question of substance under § 38–33.3–120(1) and then as one of procedure under § 38–33.3–120(2).

### A.

First, we look to whether the substance of the amendment is valid under CCIOA. Section 38–33.3–120(1)(b).

Although CCIOA does not specifically address building envelopes, § 38–33.3–217(4) and (4.5), C.R.S.2005, inform our analysis. These two sections are not among those listed in § 38–33.3–117 as applicable to pre–1992 common interest communities. Nevertheless, in our view, § 38–33.3–120(1)(b) would be meaningless unless we examined other sections of CCIOA to determine whether the statute permits the substantive result to be accomplished by an amendment, because the sections listed in § 38–33.3–117 are procedural. *See* § 38–33.3–101 (title); § 38–33.3–102 (legislative declaration); § 38–33.3–103 (definitions); §§ 38–33.3–104 to 38–33.3–111 (rules of interpretation); § 38–33.3–114 (remedies); § 38–33.3–118 (election to come under CCIOA); § 38–33.3–122 (out-of-state application); § 38–33.3–123 (enforcement). Hence, they provide no mechanism for determining whether CCIOA permits "the substantive result accomplished by the amendment."

This interpretation is consistent with comments to the Uniform Act. An example to comment 2 of § 1–206, the analogue to § 38–33.3–120, discusses amending a declaration "to provide for only 67% of the unit owners' approval of future amendments, as permitted by Section 2–117 of this Act." However, § 1–204 of the Uniform Act does not make § 2–117 applicable to pre-existing common interest communities. Hence, we are comfortable looking to § 38–33.3–217, the analog of Uniform Act § 2–117, although § 38–33.3–117, the analog of Uniform Act § 1–204, likewise does not make § 38–33.3–217 applicable to pre-CCIOA communities.

Section 38–33.3–217(4) provides that an amendment to a declaration which changes "the boundaries of any unit" requires at least sixty-seven percent owner approval. Because § 38–33.3–217(4) uses the term "any unit," rather than "all units," it permits a change in boundaries that would affect less than all the units in a common interest community.

When Colorado first enacted CCIOA, it included the Uniform Act's requirement of unanimous consent under this section. This section was later amended to require "at least sixty-seven percent."

CCIOA defines "unit" as "a physical portion of the common interest community which is designated for separate ownership or occupancy and the boundaries of which are described in or determined from the declaration." Section 38–33.3–103(30), C.R.S. 2005. Neither CCIOA nor the Uniform Act defines the term "boundaries." *See Black's Law Dictionary* 198 (8th ed.2004) (defining a boundary as "a separation that delineates the confines of real property"). Using this definition, a change to the boundaries of a unit could affect adjacent units in much the same way as a change to the building and access envelope on a lot would impact adjacent lots, such as plaintiffs' concern that here building out to the setback lines and utility easements will impair the view from their lot.

Section 38–33.3–217(4.5) allows an amendment to "change the uses to which any unit is restricted." Such an amendment would raise the same public policy concerns argued by plaintiffs: owners, having relied on limitations on the uses of adjacent units, should be protected against those limitations being relaxed. As with § 38–33.3–217(4), subsection (4.5) also initially included the Uniform Act's requirement for unanimity, but later it was amended to require at least sixty-seven percent owner approval.

■ Hence, we resolve the first question by concluding that regardless of what owner approval percentage may be required procedurally, substantively CCIOA permits changes to building and access envelopes of less than all lots in a common interest community.

■ We reject plaintiffs' argument that CCIOA should not be applied retroactively to preexisting common interest communities because statutes are presumed to apply prospectively.

■■ Absent express legislative intent to the contrary, a statute is presumed to operate only prospectively. *In re Estate of De-Witt*, 54 P.3d 849 (Colo.2002); *see also* § 2–202, C.R.S.2005 (a statute is presumed to be prospective in its operation). To overcome this presumption, a statute must clearly reveal a legislative intent that it be applied retroactively. *Ficarra v. Dep't of Regulatory Agencies*, 849 P.2d 6 (Colo.1993).

Here, § 38–33.3–117 expressly provides that "the following sections shall apply to all common interest communities created within the state before July 1, 1992...." Thus, we conclude the presumption of prospectivity is overcome because CCIOA expressly provides for application to preexisting common interest communities.

## B.

■ Second, we look at whether the procedure used to adopt the Ratification Agreement conformed to the procedures and requirements specified by the Declaration and existing law at the time Windcliff was created. Section 38–33.3–120(2). We conclude that it did.

Section 3 of the Declaration provides: "This Declaration may be amended by a duly recorded written instrument signed by not less than three-fourths of the Lot Owners...." No other section requires a greater percentage of owner approval for any particular type of amendment. The Declaration does not specify that amendments must apply to all lots.

Here, the Ratification Agreement was signed by seventy of the eighty-five lot owners, approximately eighty-two percent. Thus, we conclude that the approval was valid under the Declaration.

Turning to the procedural requirements of then existing law, plaintiffs have cited no Colorado authority, and we have found none, requiring unanimous owner approval for amendments that apply to fewer than all lots or units in a common interest community.

*Brown v. McDavid*, 676 P.2d 714 (Colo. App.1983), suggests otherwise. Although *Brown* was decided five years after Windcliff had been created, in our view it represents the most contemporaneous statement of Colorado law.

There, the division stated that "the general law is well established that a covenant running with the land in a subdivision may be modified ... upon the consent of a specified percentage of lot owners." *Brown v. McDavid, supra,* 676 P.2d at 718. *Brown* did not involve an amendment that applied to less than all the lots in the subdivision. But a case relied on by the *Brown* division, *Matthews v. Kernewood, Inc.,* 184 Md. 297, 40 A.2d 522 (1945), addressed this issue.

In *Matthews,* a developer removed from the remaining unsold lots some protective covenants that had originally applied to all the lots in the subdivision. The subdivision's declaration of covenants reserved to the developer the right to annul, change, or modify the covenants. Thus, the *Matthews* court concluded that although purchasers of the sold lots may have relied on the original restrictions, they could not be judicially relieved of a bad bargain into which they had entered, and the language of the declaration controlled.

Plaintiffs also rely on the Restatement (Third) of Property: Servitudes § 6.10 (1998) and several out-of-state cases for their assertion that if the question had arisen at the time Windcliff was created, unanimity would have been required. *See, e.g., Camelback Del Este Homeowners Ass'n v. Warner,* 156 Ariz. 21, 749 P.2d 930 (Ct.App.1987); *Montoya v. Barreras,* 81 N.M. 749, 473 P.2d 363 (1970). We are not persuaded.

According to the Restatement § 6.10(2), "Amendments that do not apply uniformly to similar lots or units ... are not effective without the approval of members whose interest would be adversely affected unless the declaration fairly apprises purchasers that such amendments may be made." Although what constitutes a "similar" lot or unit is not defined in the Restatement, here the Ratification Agreement impacts all the unbuilt but buildable lots subject to building and access envelopes.

Further, based on the division's decision in *Brown* and its reference to *Matthews,* we are not persuaded that when Windcliff was created, Colorado would have followed the out-of-state cases cited by plaintiffs.

In sum, we conclude that the Ratification Agreement was validly approved under the Declaration.

■ Plaintiffs further argue that the plain language of the Ratification Agreement contains no amendatory language. We do not address this argument because plaintiffs raise it for the first time on appeal. *See Rector v. City & County of Denver,* 122 P.3d 1010 (Colo.App.2005). They could have raised this argument in opposing defendant's motion to dissolve the injunction, but they did not do so.

Accordingly, we further conclude that the trial court did not err in relying on the Ratification Agreement to dissolve its injunction on defendant's lot.

Based on this conclusion, we need not address plaintiffs' appeal and defendant's cross-appeal of the trial court's original injunction, which has been dissolved, except as relevant to the attorney fees claims discussed in section III below. *See W–470 Concerned Citizens v. W–470 Highway Auth.,* 809 P.2d 1041 (Colo.App.1990).

## II.

■ Alternatively, plaintiffs contend, for the first time on appeal, that if CCIOA permits an amendment of the Declaration affecting only some lots, based on approval of less than 100% of the owners, then it is unconstitutional because it (1) retroactively affects vested property rights and (2) impairs the obligations of contracts.

■ We do not entertain challenges to the constitutionality of a statute raised for the first time on appeal. *People v. Boyd,* 30 P.3d 819 (Colo.App.2001) (citing *People v. Cagle,* 751 P.2d 614 (Colo.1988))(facial unconstitutionality); *People v. Perea,* 74 P.3d 326 (Colo.App.2002)(unconstitutionality as applied).

On petition for rehearing, plaintiffs argue that they could not have raised their constitutional arguments below because CCIOA became relevant only when the trial court adopted defendant's reply brief CCIOA argument and on that basis dissolved the injunction. We are not persuaded.

Upon receipt of defendant's reply brief, plaintiffs knew that CCIOA could become the basis for dissolving the injunction. At that time, they could have preserved their position by either moving to strike the CCIOA argument as improper new argument in the reply brief or seeking leave to file a surreply responding to defendant's CCIOA argument on the basis of their current assertion that such application of CCIOA would be unconstitutional. But plaintiffs did neither.

## III.

Plaintiffs and defendant both contend the trial court erred in declining to award attorney fees under § 38–33.3–123, C.R.S.2005. We agree, but award fees only to plaintiffs.

Section 38–33.3–123(1)(c), which is applicable to pre-CCIOA communities under § 38–33.3–117, provides in pertinent part:

> For each claim or defense . . . in any legal proceeding to enforce or defend the provisions of this article or of the declaration . . . the court shall award to the party prevailing on such claim the prevailing party's reasonable collection costs and attorney fees and costs incurred in asserting or defending the claim.

### A.

We first address and reject the trial court's conclusion that "this case involved a determination of the proper construction of the Windcliff Estates covenants, rather than their enforcement."

■ Section 38–33.3–123(1)(c) awards attorney fees "in any legal proceeding to enforce or defend the provisions of . . . the declaration." But the trial court reasoned that this action was not brought to enforce a covenant because the Board "in effect invited either or both of the parties to seek a Court review . . . [and otherwise] this litigation would not have been necessary." We do not agree.

Here, plaintiffs sought an injunction to prevent defendant from either building on Lot 2A at all or building outside of the original building and access envelope. Despite the Board's decision, defendant took

affirmative steps to build on the lot by submitting a development plan that contemplated construction outside of the envelope, getting it approved, and obtaining building permits. Defendant then sent a letter to plaintiffs advising them of its intent to "commence construction of improvements on Lot 2A at any time after 8:00 a.m. Friday, July 18, 2003" and began removing some trees.

Thus, although defendant did not begin actual construction before plaintiffs filed their complaint, these actions evinced defendant's unequivocal intent to do so. Hence, plaintiffs were properly seeking an injunction to prevent imminent construction on Lot 2A. *See Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc.*, 21 P.3d 860 (Colo. 2001)(threat plus affirmative action toward construction constituted failure to comply with restrictive covenants under former version of § 38–33.3–123(1)).

Accordingly, we conclude the trial court erred in determining this case was to construe the Declaration, not to enforce it.

### B.

■ We next address and reject the trial court's conclusion that there was no prevailing party under § 38–33.3–123(1)(c). Plaintiffs and defendant argue that each was the prevailing party. We agree with plaintiffs.

Section 38–33.3–123(1)(c) provides, "For *each claim* . . . the court shall award to the party prevailing on such claim the prevailing party's [fees and costs] incurred in asserting or defending the claim" (emphasis added).

■ The "shall award" language of § 38–33.3–123(1)(c) mandates an award of attorney fees and costs. *Pagosa Lakes Prop. Owners Ass'n v. Caywood*, 973 P.2d 698 (Colo.App.1998). Determining which party prevailed is committed to the trial court's discretion. *Bedard v. Martin*, 100 P.3d 584 (Colo.App.2004). However, "[b]y the express language of the statute, an award is due [to] the prevailing party if that party prevails on a 'claim.'" *Dunne v. Shenandoah Homeowners Ass'n*, 12 P.3d 340, 345 (Colo.App. 2000). Thus, the prevailing party "for each claim" is entitled "to attorney's fees and

costs for that aspect of [the] case." *Hallmark Bldg. Co. v. Westland Meadows Owners Ass'n,* 983 P.2d 170, 174 (Colo.App.1999).

Here, plaintiffs brought a claim for declaratory relief to "determine the rights of defendant with respect to construction of improvements within Lot 2." Within that single claim, plaintiffs asked the court to determine "that defendant can construct no buildings, driveways, parking spaces, or other improvements on [Lot 2A]," or, in the alternative, "that any improvements which defendant may be allowed to construct on [Lot 2A] must be constructed within the building and access envelope shown on the original plat." Although plaintiffs did not plead a separate claim for injunctive relief, they sought such relief "consistent with the court's determination with respect to declaratory relief." Defendant did not file any counterclaims.

The trial court agreed with plaintiffs' alternative argument, but declined to award fees because "neither party can be said to have prevailed over the other, in any technical or practical sense."

The parties have cited no Colorado case, and we have found none, addressing whether, under a statutory fee-shifting provision mandating an award to the prevailing party, a court may nevertheless decide that the case ended in a tie. *Compare Bedard v. Martin, supra* (under similar contractual provision, court must declare which party prevailed), *and Brock v. Weidner,* 93 P.3d 576 (Colo. App.2004) (same), *with Dennis Spencer, Contractor v. City of Aurora,* 884 P.2d 326, fn. 11 (Colo.1994)(cases from other jurisdictions holding that under net judgment rule court can determine that neither party prevailed); *and Pastrana v. Hudock,* 140 P.3d 188 (Colo. App.2006)(no abuse of discretion in ruling that each party had prevailed in part and thus should pay its own costs under C.R.C.P. 54(d)).

But even assuming a trial court could, within its discretion, determine that an overall case ended in a tie, CCIOA does not direct the court to award fees by looking at the case as a whole. Rather, § 38–33.3–123(1)(c) requires a court to award fees "[f]or each claim ... to the party prevailing on such claim." Thus, the statutory claim-by-claim approach differs from the C.R.C.P. 54(d) analysis of multiple claim cases, which involves "the significance of each party's successes in the context of the overall litigation." *Pastrana v. Hudock, supra,* 140 P.3d at 190.

Based on this "for each claim" language, we reject the trial court's "technical or practical sense" analysis and instead examine plaintiffs' single declaratory judgment claim to determine which party prevailed. We conclude that plaintiffs prevailed.

### 1.

In the initial proceeding, the trial court concluded that eliminating the building and access envelope on Lot 2A required three-fourths owner approval and therefore defendant's construction was limited to the original building and access envelope, but that defendant could construct multiple units on Lot 2A. We agree.

### a.

The interpretation of a covenant is a question of law that we review de novo. *Evergreen Highlands Ass'n v. West,* 73 P.3d 1 (Colo.2003).

We must "follow the dictates of plain English" when interpreting a restrictive covenant. *Double D Manor, Inc. v. Evergreen Meadows Homeowners' Ass'n,* 773 P.2d 1046, 1048 (Colo.1989) (quoting *D.C. Burns Realty & Trust Co. v. Mack,* 168 Colo. 1, 4, 450 P.2d 75, 76 (1969)). When the language of a covenant is clear, we will enforce it as written. *Rossman v. Seasons at Tiara Rado Assocs.,* 943 P.2d 34 (Colo.App. 1996). When it is unclear, we resolve all doubts against the restriction "and in favor of free and unrestricted use of property." *Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc., supra,* 21 P.3d at 862.

Here, article V, section 2 of the Declaration provides: "All lots shown on said plat containing building and access envelopes may be used for not more than the number of residential living units shown on each of such lots." Additionally, the Declaration "may be amended by a duly recorded written instrument signed by not less than three-fourths of

the Lot Owners." Before the Ratification Agreement, the 1991 amended plat had not been approved by three-fourths of the lot owners.

Nevertheless, defendant argues that eliminating the building and access envelope on Lot 2A through the amended plat did not constitute an amendment of the Declaration, and hence did not require approval of three-fourths of the lot owners. We disagree.

Section 38–33.3–103(13), C.R.S.2005, provides, " '[d]eclaration' means any recorded instruments however denominated, that create a common interest community, including any amendments to those instruments and also including, but not limited to, *plats and maps* " (emphasis added). Thus, by definition a plat can be part of a declaration.

The original plat of the lots was attached to the Declaration when it was recorded in 1976. The Declaration also provides: "Declarants are all the owners of any interest in the following described real property ... Windcliff Estates Fifth Subdivision & Replat of Lot 4½, Webster Big Horn Subdivision, a Planned Unit Development." This description is the title listed on the plat. Further, the Declaration specifically refers to the plat for the location of building and access envelopes and for the number of buildable units per lot.

Thus, we agree with the trial court that eliminating the building and access envelope on Lot 2A was an amendment to the Declaration which required, but did not receive, three-fourths owner approval.

### b.

However, we are not persuaded by plaintiffs' argument that in attempting to eliminate the building and access envelope on Lot 2A, defendant waived its right to construct multiple units.

The original plat expressly provided that up to five residential units could be built on Lot 2. While the Declaration does not prohibit subdivision of this lot, the Declaration requires that lots with building and access envelopes "be used for not more than the number of residential living units shown on each of such lots."

For the same reasons that we have concluded the 1991 amended plat did not validly eliminate the building and access envelope, we also conclude that it did not reduce the number of units that could be built on Lot 2A.

Further, the 1991 amended plat does not suggest an intention to waive constructing multiple units. It expressly provides that four units may be constructed on Lot 2A and one unit may be constructed on Lot 2B. *See Ross v. Old Republic Ins. Co.,* 134 P.3d 505 (Colo.App.2006) (waiver may be express, as when a party states its intent to abandon an existing right, or may be implied, as when a party engages in conduct that manifests its intent to relinquish the right).

Accordingly, we conclude the trial court did not err in determining that the original building and access envelope applied to Lot 2A, but defendant could build four units within that envelope.

### 2.

Because plaintiffs prevailed on their alternative argument for a declaration limiting defendant's construction to the original building and access envelope, and thereby obtained injunctive relief, we conclude that they were the prevailing party on the declaratory judgment claim and thus are entitled to attorney fees and costs for this aspect of the case. *See Hallmark Bldg. Co. v. Westland Meadows Owners Ass'n, supra.*

Further, we are not persuaded by defendant's argument that a pro se attorney should not be awarded attorney fees. In *Wimmershoff v. Finger,* 74 P.3d 529 (Colo. App.2003), a division of this court concluded that a pro se attorney could recover attorney fees. We discern no reason to depart from the reasoning of *Wimmershoff* here.

Accordingly, on remand the trial court shall determine a reasonable fee award on plaintiffs' declaratory judgment claim. *See* C.A.R. 39.5. In making that determination, the court may consider that plaintiffs did not obtain all the relief they sought in their declaratory judgment claim. *See* Colo. RCP 1.5(a)(4) (factors in determining a reasonable fee include "the results obtained"); *see also Agritrack, Inc. v. DeJohn Housemoving,*

*Inc.,* 25 P.3d 1187 (Colo.2001)(court may consider Colo. RPC 1.5 in determining amount of fee award).

### IV.

■ Finally, defendant contends it should be awarded attorney fees on appeal, limited to the Ratification Agreement issue, based on § 13–17–102(4), C.R.S.2005. We disagree.

Under § 13–17–102(4), a court shall award attorney fees if an attorney or a party brings or defends an action that lacks substantial justification. A claim lacks substantial justification if it is substantially frivolous or groundless. *City of Aurora v. Colo. State Eng'r,* 105 P.3d 595 (Colo.2005). An appeal lacks substantial justification and is substantially frivolous under § 13–17–102(4) when the appellant's briefs fail to set forth, in a manner consistent with C.A.R. 28, a coherent assertion of error, supported by legal authority. *Castillo v. Koppes–Conway,* 148 P.3d 289 (Colo.App. 2006).

Although plaintiffs presented their unanimity argument in response to defendant's motion to dissolve the injunction, defendant nevertheless asserts that plaintiffs' position on appeal is frivolous because it differs from their initial summary judgment position below that "any restrictions shown on the plat cannot be reduced or abrogated except by the written, recorded consent of three-fourths of the lot owners." We are not persuaded.

Plaintiffs' unanimity argument is a matter of first impression in Colorado. They relied on authority from other jurisdictions supporting their position. Thus, we cannot say their appeal of this issue is frivolous. *See Eurpac Serv. Inc. v. Republic Acceptance Corp.,* 37 P.3d 447 (Colo.App.2000)(matter of first impression not frivolous).

Accordingly, we affirm the trial court's order dissolving the injunction, reverse its order declining to award attorney fees, and remand for further proceedings on attorney fees consistent with this opinion.

DAILEY and BERNARD, JJ., concur.