The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 12, 2021

## 2021COA108

**No. 20CA1179, *Town of Vail v. Village Inn Plaza – Phase V Condominium Association* — Real Property — Common Interest Communities — Colorado Common Interest Ownership Act — Applicability of Local Ordinances, Regulations, and Building Codes**

A division of the court of appeals considers whether the anti-discrimination provision of the Colorado Common Interest Ownership Act (CCIOA), section 38-33.3-106, C.R.S. 2020, invalidates a section within a Town of Vail ordinance that pre-dates the CCIOA's enactment. The division holds that it does. Specifically, it finds that (1) because the present-day enforcement of the ordinance is an "event[] and circumstance[] occurring on or after July 1, 1992," § 38-33.3-117(1), C.R.S. 2020, the CCIOA and its anti-discrimination provision retroactively apply; (2) section 11(6) of the Town's ordinance violates the CCIOA's anti-

discrimination provision because it facially discriminates against condominiums; and (3) the CCIOA preempts the Town's ordinance. Based on this holding, the division also finds that the defendant condominium association is entitled to attorney fees.

COLORADO COURT OF APPEALS                                    2021COA108

---

Court of Appeals No. 20CA1179
Eagle County District Court No. 14CV30259
Honorable Reed W. Owens, Judge

---

Town of Vail, a Colorado home rule municipality,

Appellant,

v.

Village Inn Plaza-Phase V Condominium Association, a Colorado non-profit corporation; Vail Village Inn, Inc., a Colorado corporation; Griffin Development LLC, a Texas limited liability company; Karin Wagner, as Trustee for the Karin Wagner Revocable Inter Vivos Trust; Meadow Drive Ventures Inc., a Colorado Corporation; Potamus Bean LLC, a Texas limited liability company; Staufer Commercial LLC, a Colorado limited liability company; VVI, LLC, a Colorado limited liability company; Richard L. Liebhaber,

Appellees.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE DAVIDSON*
Román and Lipinsky, JJ., concur

Announced August 12, 2021

---

Hoffman, Parker, Wilson & Carberry, P.C., Kendra L. Carberry, Denver, Colorado; Hoffman, Parker, Wilson & Carberry, P.C., J. Matthew Mire, Vail, Colorado, for Appellant

Miletich, P.C., Walter N. Houghtaling, Denver, Colorado; Frederick G. Aldrich LLC, Frederick G. Aldrich, Grand Junction, Colorado, for Appellee Village Inn Plaza-Phase V Condominium Association

Porterfield Oliver LLC, Wendell Porterfield, Vail, Colorado, for Appellees Staufer Commercial LLC and Vail Village Inn, Inc.

Hale Law LLC, Allan Hale, Steamboat Springs, Colorado, for Appellees Griffin Development LLC, Karin Wagner, Meadow Drive Ventures Inc., Potamus Bean LLC, Richard L. Liebhaber; and VVI, LLC

Altitude Community Law, P.C., William Short, Azra Taslimi, Lakewood, Colorado, for Amicus Curiae Community Associations Institute

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2020.

¶ 1    The anti-discrimination provision of the Colorado Common Interest Ownership Act (CCIOA), section 38-33.3-106, C.R.S. 2020, states that no ordinance may "impose any requirement upon a condominium or cooperative which it would not impose upon a physically identical development under a different form of ownership." At issue in this appeal is whether a portion of an ordinance enacted by the Town of Vail (Town) violates this provision. In a declaratory order entered on summary judgment in favor of the Village Inn Plaza-Phase V Condominium Association (the Association), the district court said it did, and we agree. Accordingly, we affirm.

## I.    Background

### A.    The Town's Ordinance, its Restrictions, and the Association's Amended Rules

¶ 2    The Town Code of Vail (Town Code) and its zoning regulations allow the City Council to establish Special Development Districts through an ordinance. Town Code § 12-9A-4(D). In 1976, the Town enacted an ordinance establishing the Village Inn Plaza development as Special Development District No. 6 (SDD no. 6). In 1987, the Town enacted an ordinance modifying the 1976

1

ordinance to allow for the development of Phase V of the Village Inn Plaza development.

¶ 3     The 1987 ordinance includes several conditions of approval for developers building within SDD no. 6.  The relevant condition of approval here is section 11(6), which states as follows:

> Restrictions on any units in Phases IV or V which would be condominiumized shall be as outlined in Section 17.26.075 of the Vail Municipal Code and any amendments thereto.

Section 17.26.075, recodified as section 13-7-8 of the Town Code, imposes several restrictions on units converted to condominiums prior to February 7, 1995.  Town Code § 13-7-8(A).[1]  The restrictions require that condominium units "remain in the short term rental market to be used as temporary accommodations available to the general public," Town Code § 13-7-8(B); limit an owner's personal use of their unit during the "high season," Town Code § 13-7-8(B)(1); and impose fines for violations, Town Code

---

[1]  The Town Code defines a "condominium conversion" as the use of any property as a condominium project regardless of the present or prior use of the property.  Town Code § 13-7-2.

§ 13-7-8(B)(2). Although the 1987 ordinance has been amended, the restrictions remain in the Town Code.

¶ 4 In 1988, the Association, seeking to establish a condominium project within Phase V, recorded a condominium declaration. The declaration adopted the restrictions for condominiums outlined in the 1987 ordinance and section 13-7-8 of the Town Code as section 21(i) of the declaration. In 2013, the Association adopted Policies, Rules, Regulations, and Guidelines. In 2013 and 2014, the Association amended its rules to state that the Association would no longer enforce section 21(i) of its original condominium declaration (i.e., the restrictions from the 1987 ordinance and section 13-7-8 of the Town Code).

## B. Procedural History

¶ 5 In 2014, Staufer Commercial, LLC, a commercial owner in Phase V, sought a declaratory judgment that the Association's amended rules announcing its refusal to enforce section 21(i) violate the Association's condominium declaration. The Town joined as an indispensable party and filed a cross-claim seeking a declaratory judgment that section 21(i) of the amended rules violates the 1987 ordinance and section 13-7-8 of the Town Code.

3

¶ 6     In January 2015, the Town amended its cross-claim to allege that section 21(i) specifically violates section 11(6) of the 1987 ordinance and section 13-7-8 of the Town Code (i.e., the restrictions on condominiums).  Subsequently, the Association filed a motion for partial summary judgment pursuant to C.R.C.P. 56, seeking dismissal of the Town's cross-claim on the grounds that section 11(6) of the ordinance violates the anti-discrimination clause of the CCIOA.  The Town asserted in response that the CCIOA does not apply retroactively to the 1987 ordinance and that, even if it does, the Association presented no evidence to show discrimination against the condominium form of ownership.

¶ 7     In June 2018, the district court granted the Association's motion for partial summary judgment on the amended cross-claim based on section 11(6) of the ordinance.  It found that (1) although the CCIOA applies generally to communities created after July 1, 1992, it applies here because the Town's enforcement of the 1987 ordinance constituted an "event[] and circumstance[]" that permits retroactive application of the CCIOA, § 38-33.3-117(1), C.R.S. 2020; and (2) the 1987 ordinance is discriminatory as a matter of law

because "the language of Vail's ordinance applies only to condominiums."

¶ 8    The Town filed an appeal with this court, but, because the June 2018 order did not resolve the Town's second amended cross-claim — a claim for penalties against the Association and residential owner defendant Richard L. Liebhaber — we dismissed it without prejudice for lack of jurisdiction. On remand, the district court granted a motion to dismiss the Town's second amended cross-claim on the same grounds as those set forth in its June 2018 order. The court then issued a C.R.C.P. 54(b) certification, and we are satisfied that we now have jurisdiction to consider the Town's appeal of the district court's declaratory judgment order dismissing the second cross-claim.

¶ 9    On appeal, the Town argues that the district court's determination that the restriction provision of section 11(6) of the 1987 ordinance violates the anti-discrimination provision of the CCIOA was in error because the CCIOA does not retroactively apply to the 1987 ordinance and because the 1987 ordinance is not facially discriminatory. It further argues that, in any event, the

CCIOA is inapplicable because it is preempted by section 11(6) as a matter of purely local concern.

## II. Whether the Anti-Discrimination Provision of the CCIOA Retroactively Applies to Section 11(6) of the 1987 Ordinance

¶ 10 Phase V of the development was created in 1988, four years before the CCIOA's effective date. As a threshold matter, the Town contends that section 11(6) of the 1987 ordinance cannot violate the CCIOA because the statute does not apply retroactively to the 1987 ordinance. We disagree.

### A. Legal Principles

¶ 11 Whether the CCIOA applies in this instance is a question of statutory interpretation. We review questions of statutory interpretation de novo. *Hunsaker v. People*, 2015 CO 46, ¶ 11. When interpreting a statute, our primary goal is to ascertain and give effect to the General Assembly's purpose and intent in enacting it. *People v. Cooper*, 27 P.3d 348, 354 (Colo. 2001); *People v. Sims*, 2019 COA 66, ¶ 33. In doing so, we look first to the statute's plain language, and if that language is clear, we enforce the statute as written and "do not need to resort to other rules of statutory construction." *Nowak v. Suthers*, 2014 CO 14, ¶ 20.

## B. Analysis

¶ 12    The CCIOA applies to common interest communities "created" in Colorado after the CCIOA's effective date of July 1, 1992. § 38-33.3-115, C.R.S. 2020. Importantly, however, while the statute generally does not apply to communities created before its effective date, § 38-33.3-117(3); *see also DA Mountain Rentals, LLC v. Lodge at Lionshead Phase III Condo. Ass'n*, 2016 COA 141, ¶ 28, it provides for two exceptions. The first allows associations for pre-existing communities to elect to be governed by the CCIOA in its entirety. § 38-33.3-118, C.R.S. 2020; *DA Mountain Rentals*, ¶ 28. That exception is not relevant here because the Association did not elect to do so.

¶ 13    The second exception, however, provides that, for certain specified statutory provisions, pre-existing communities are subject to the CCIOA for "events and circumstances occurring on or after July 1, 1992." § 38-33.3-117(1); *see Giguere v. SJS Fam. Enters., Ltd.*, 155 P.3d 462, 469 (Colo. App. 2006) (sections of the CCIOA made applicable to pre-existing common interest communities apply retroactively pursuant to section 38-33.3-117). Here, the parties do not dispute that section 38-33.3-106, the anti-

7

discrimination provision of the CCIOA, is one of the provisions covered by section 38-33.3-117(1) for "events and circumstances occurring on or after July 1, 1992." But they disagree whether there has been an "event[] and circumstance[]" occurring after July 1, 1992, triggering section 38-33.3-117(1).

¶ 14     In its order, the district court concluded that "the present-day effect of this ordinance is, of necessity, an 'event[] and circumstance[] occurring on or after July 1, 1992.'" We agree.

¶ 15     "Event" means "something that happens," or "a noteworthy happening." Merriam-Webster Dictionary, https://perma.cc/4VTG-HNPQ. "Circumstance" means "a condition, fact, or event accompanying, conditioning, or determining another." Merriam-Webster Dictionary, https://perma.cc/357U-LD8V. Certainly, the Town's current attempt to enforce section 11(6) of the 1987 ordinance by bringing cross-claims against the Association and the residential owners is something that is happening and an event with the potential to determine future events. The plain meaning of an "event and circumstance," therefore, unambiguously includes the Town's current actions in seeking to enforce the 1987 ordinance. As the district court reasoned, "the relevant provisions

8

of the CCIOA are applicable to common-interest entities created before 1992, and those relevant provisions, as a matter of plain language, apply to current-day occurrences, with such occurrences including the present-day effect of municipal ordinances." *See DA Mountain Rentals*, ¶ 29 (association exercising its power to amend its declaration triggered retroactive application of the CCIOA); *Pagosa Lakes Prop. Owners Ass'n v. Caywood*, 973 P.2d 698, 701 (Colo. App. 1998) (association exercising its power to adopt and amend bylaws, rules, and regulations triggered retroactive application of the CCIOA); *Giguere*, 155 P.3d at 467 (retroactive application of the CCIOA was imposed after association's declaration was amended); *RiverPointe Homeowners Ass'n v. Mallory*, 656 S.E.2d 659, 660-61 (N.C. Ct. App. 2008) (association's attempt to impose fines and enforce the fines by foreclosure constituted an event and circumstance triggering application of the North Carolina Planned Community Act); *Holloway v. Tanasi Shores Owners Ass'n*, No. M2018-00932-COA-R3-CV, 2019 WL 1988502, at *2 (Tenn. Ct. App. May 6, 2019) (association policy change constituted an event and circumstance triggering retroactive application of the Tennessee Condominium Act).

¶ 16     Contrary to the Town's assertion, deeming enforcement of a pre-existing ordinance an "event and circumstance" does not lead, in the Town's words, to the "absurd result" that it cannot enforce any pre-existing ordinance, including zoning ordinances, against a common interest community.

¶ 17     First, we are not convinced that section 11(6) of the ordinance and section 13-7-8 of the Town Code are zoning ordinances.[2]

¶ 18     In any event, and more importantly, the legislature has specified that, if and when events and circumstances warrant, only certain parts of the CCIOA could be applied retroactively; that is, application of the CCIOA to pre-existing common interest communities does not render entire ordinances invalid — just the parts that violate prohibitions within section 38-33.3-117.  *See DA Mountain Rentals*, ¶ 28; *Giguere*, 155 P.3d at 469.  Indeed, the court's declaratory judgment that section 38-33.3-106(2) of the CCIOA invalidates as discriminatory section 11(6) of the ordinance

---

[2] Although the Town asserted in its briefs, and again at oral argument, that it treats subdivision regulations the same as zoning regulations, it offered no explanation or supporting authority as to why.

10

— regardless of whether it is a subdivision or zoning regulation — does not affect the remainder of the ordinance.

¶ 19 Accordingly, we agree with the district court and conclude that the Town's actions in attempting to enforce section 11(6) of the 1987 ordinance are "events and circumstances" triggering application of the CCIOA's anti-discrimination clause under section 38-33.3-106(2) and further conclude, therefore, that this provision of the CCIOA applies retroactively in this instance.[3]

III.    Whether the Ordinance is Facially Discriminatory

¶ 20 Alternatively, the Town contends that even if the CCIOA anti-discrimination clause applies, the district court erred by granting

---

[3] The Town argued for the first time in a motion for reconsideration filed in the district court that the court erred by failing to consider the legislative history of the Uniform Act on which the CCIOA was based. The Association counters that the argument wasn't properly raised and, even if it was, the legislative history supports the court's statutory interpretation. We need not reach those issues, however. Any review of legislative history is unnecessary and inappropriate because we have determined that the statutory language is plain and the result of enforcing the plain language is not absurd. *See, e.g.*, *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1190 (Colo. 2010) ("The legislative history . . . cannot render the plain and unambiguous language of [a statutory provision] ambiguous.").

11

summary judgment for the Association on the grounds that the 1987 ordinance violates this provision as a matter of law.

## A.     Legal Principles

¶ 21     Under C.R.C.P. 56, summary judgment is proper when the pleadings, affidavits, depositions, and admissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Civ. Serv. Comm'n v. Pinder*, 812 P.2d 645, 649 (Colo. 1991). The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party. C.R.C.P. 56; *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo. 1987). Once the moving party clears this initial evidentiary hurdle, the burden shifts to the nonmoving party to present evidence showing a triable issue of fact. *Griswold v. Nat'l Fed'n of Indep. Bus.*, 2019 CO 79, ¶ 24. If the nonmoving party cannot produce such evidence, the moving party is entitled to summary judgment. *Cont'l Air Lines*, 731 P.2d at 713.

¶ 22     We review the court's decision granting summary judgment de novo. *Credit Serv. Co. v. Dauwe*, 134 P.3d 444, 445 (Colo. App. 2005).

¶ 23    The same rules of construction apply in interpreting ordinances as apply in interpreting statutes. *City of Colorado Springs v. Securcare Self Storage, Inc.*, 10 P.3d 1244, 1248 (Colo. 2000). Therefore, in construing an ordinance, we look first to its plain language, and if we can give effect to the ordinary meaning of the words used by the legislative body, we construe it as written. *Id.* at 1249.

¶ 24    We review de novo the district court's interpretation of the ordinance. *Asphalt Specialties, Co. v. City of Commerce City*, 218 P.3d 741, 745 (Colo. App. 2009).

### B.    Analysis

¶ 25    As set forth above, the anti-discrimination provision of the CCIOA states that

> no . . . ordinance . . . may . . . impose any requirement upon *a condominium or cooperative which it would not impose upon a physically identical development under a different form of ownership.*

§ 33-33.3-106(2) (emphasis added). That is, when an ordinance imposes a restriction based on a development being a condominium, the ordinance violates the CCIOA's anti-discrimination clause.

13

¶ 26    And, as also set forth above, section 11(6) of the Town's 1987 ordinance states:

> Restrictions on any units in Phases IV or V *which would be condominiumized* shall be as outlined in Section 17.26.075 of the Vail Municipal Code and any amendments thereto.

(Emphasis added). By its plain terms, section 11(6) anticipates two distinct forms of ownership — condominium ownership and non-condominium ownership — and imposes restrictions on only the condominium form of ownership.

¶ 27    Also in plain terms, section 11(6) further states that the restrictions as described in section 17.26.075 of the Town Code (now section 13-7-8), which imposes restrictions on units converted from different types of ownership to condominiums prior to February 7, 1995, shall apply to units "which would be condominiumized." Those restrictions, as described in section 13-7-8, require that the condominium units "remain in the short term rental market to be used as temporary accommodations available to the general public," restrict an owner's personal use of their unit during the "high season," and impose fines for violations. Critically, these restrictions do not apply to other forms of ownership.

14

¶ 28    Because section 11(6) of the ordinance singles out condominiums (and section 13-7-8 of the Town Code does so as well), it is facially apparent that section 11(6) discriminates against the condominium form of ownership in violation of the CCIOA's anti-discrimination provision as a matter of law.  Section 11(6) imposes the restrictions described in section 17.26.075, now section 13-7-8 of the Town Code, on Phase V units *only if the units would be condominiumized.*  Conversely, in plain language, if the units are not condominiumized, then the restrictions do not apply.

¶ 29    Similarly, we see no merit in the Town's argument that the court erred by failing to require evidence from the Association to demonstrate discrimination — for example, that the developer sought to construct Phase V without any condominiums, or that the Town would not have imposed the residency restriction for the development of physically identical non-condominium dwellings, or that other buildings exist that are identical to Phase V and those buildings don't contain condominiums, or that such buildings were not subject to the restrictions as a condition of approval.

¶ 30    What the Town or the developer would do under other circumstances is immaterial.  It simply does not matter whether

Phase V currently has non-condominiums or whether there are plans to have non-condominiums. Regardless of what units exist or are ultimately developed, the plain language of the ordinance applies the restrictions only to condominiums and, conversely, excludes from the restrictions non-condominiums. As the district court stated: "The language of Vail's ordinance applies only to condominiums. The ordinance is, on its face, discriminatory. This is not a matter of proof — it is a matter of law." *See Town of Westerly v. Waldo*, 524 A.2d 1117, 1119 (R.I. 1987) (identifying condominium ownership as a "use" in the zoning regulations would have violated a state statute prohibiting discrimination against condominiums); *Multi-Fam. Council of Se. Pa. v. City of Philadelphia*, 3 Pa. D. & C.4th 1, 2 (Ct. Com. Pl. 1989) (city tax that singled out condominiums violated Pennsylvania's Uniform Condominium Act and its prohibition on discrimination against condominiums).

IV. Whether the CCIOA Cannot Apply Because Vail is a Home-Rule Municipality

¶ 31     The Town also argues that the CCIOA cannot invalidate the ordinance because enforcement of the ordinance's regulations is a

matter of purely local concern reserved for home-rule municipalities. Again, we disagree.

## A. Legal Background

¶ 32    Article XX, section 6 of the Colorado Constitution grants municipalities "home-rule" authority to create or amend charters to govern local and municipal matters. The effect of this constitutional provision is that on issues of local concern, a home-rule city's law can preempt conflicting state legislation; and on matters of statewide concern, state legislation can preempt a home-rule city's conflicting law. *See City of Northglenn v. Ibarra*, 62 P.3d 151, 155 (Colo. 2003).

¶ 33    To determine whether a home-rule city or the state has plenary authority for purposes of article XX, section 6, we have recognized that regulatory matters fall into three broad categories: (1) matters of local concern; (2) matters of statewide concern; and (3) matters of mixed state and local concern. *Ibarra*, 62 P.3d at 155 (citing *City of Commerce City v. State*, 40 P.3d 1273, 1279 (Colo. 2002)). In matters of local concern, both the state and home-rule city may legislate. *Id.* If the home-rule city's regulation conflicts with the state statute, the home-rule enactment controls. *Webb v.*

*City of Black Hawk*, 2013 CO 9, ¶¶ 16-17 (citing *City & Cnty. of Denver v. Qwest Corp.*, 18 P.3d 748, 754 (Colo. 2001)). In matters of statewide concern, the state legislature exercises plenary authority, and home-rule cities may regulate only if the constitution or a statute authorizes such legislation. *Ibarra*, 62 P.3d at 155. In matters involving mixed state and local concern, local enactments and state statutes may coexist if there is no conflict. *Id.* In the event of a conflict, however, the state statute supersedes the local regulation. *Webb*, ¶ 18 (citing *City & Cnty. of Denver v. State*, 788 P.2d 764, 767 (Colo. 1990)).

¶ 34    To determine whether a matter is local, statewide, or mixed, we consider several factors, including (1) the need for statewide uniformity of regulation; (2) the extra-territorial impact of local regulation; (3) whether the matter has traditionally been regulated at the state or local level; and (4) whether the Colorado Constitution specifically commits the matter to state or local regulation. *Town of Telluride v. Lot Thirty-Four Venture, L.L.C.*, 3 P.3d 30, 37 (Colo. 2000). We have also considered legislative declarations as to whether a matter is of statewide concern. *Ibarra*, 62 P.3d at 156 (first citing *City of Commerce City*, 40 P.3d at 1280; and then citing

*Telluride*, 3 P.3d at 37). When considering these factors, we weigh the respective interests of the locality and the state in regulating a particular matter. *Id.* At times, we may conclude that a matter is of mixed or statewide concern even though there exists a relatively smaller, local interest. *See id.* Thus, even if the locality may have an interest in regulating a matter to the exclusion of the state under its home-rule powers, such an interest may be insufficient to find that the matter is purely local. *Id.*

## B. Analysis

¶ 35    Applying the four factors, we conclude that the enforcement or non-enforcement of the Town's 1987 ordinance is a matter of mixed local and state concern and that, because the ordinance conflicts with the CCIOA, the CCIOA preempts it.

### 1. The Regulation of Common Interest Communities is a Matter of Mixed Concern

¶ 36    We first conclude that the regulation of common interest communities is a matter of mixed concern, addressing each factor in turn.

### a. Uniformity

¶ 37 When the General Assembly enacted the CCIOA, it intended to create a "clear, comprehensive, and *uniform* framework for the creation and operation of common interest communities." § 38-33.3-102(1)(a), C.R.S. 2020 (emphasis added) (CCIOA legislative declaration). In doing so, the legislature declared "[t]hat it is the policy of this state to give developers flexible development rights with specific obligations within a *uniform structure of development of a common interest community* that extends through the transition to owner control." § 38-33.3-102(1)(c) (emphasis added). As well, section 38-33.3-106, the anti-discrimination clause, is titled "Applicability of local ordinances, regulations, and building codes." The section's goal is clearly to regulate and limit discriminatory local ordinances. Because the legislature has indicated a clear interest in regulating discriminatory local ordinances and an interest in uniformity under the CCIOA generally, we find that the CCIOA sets forth a clear need for the uniform regulation of common interest communities. *See City of Commerce City*, 40 P.3d at 1280 (we may look at legislative declarations to determine the uniformity element); *Ibarra*, 62 P.3d at 160 ("Although uniformity in itself is no

virtue, we have found statewide uniformity necessary when it achieves and maintains specific state goals.") (citations omitted).

### b. Extra-Territorial Impact

¶ 38 The extent of the extra-territorial impact of the regulation of common interest communities is informed in part by our supreme court's decision in *Telluride*, 3 P.3d 30. There, the Town of Telluride sought to enforce an ordinance that imposed an "affordable housing" requirement. The court held, first, that the ordinance was at its core a rent control ordinance and, second, that state regulations prohibiting rent control preempted the ordinance because rent control was a matter of mixed local and statewide concern. In coming to that conclusion, the court noted the extra-territorial impact of the ordinance on the state's objectives and other communities:

> Managing population and development growth is among the most pressing problems currently facing communities throughout the state. *Restricting the operation of the free market with respect to housing in one area may well cause housing investment and population to migrate to other communities already facing their own growth problems.* Although such a ripple effect may well be minimal in Telluride because of its geographic isolation, it is absolutely true that the growth of other mountain resort

21

> communities has impacted neighboring
> communities greatly. The fact that the
> Telluride ordinance is an affirmative effort to
> mitigate that impact does not change the fact
> that the growth of the one community is tied to
> the growth of the next, thereby buttressing the
> need for a regional or even statewide approach.

*Id.* at 39 (emphasis added).

¶ 39 Like the rent control ordinance in *Telluride*, the ordinance here restricts the operation of the free housing market in a way that could have an extra-territorial ripple effect. Restrictions on the condominium form of ownership — especially those requiring owners to place their units on a short-term rental market — could cause housing investment and populations to migrate to communities without such restrictions.

### c. Tradition

¶ 40 Although the regulation of housing is sometimes left to local bodies, and municipalities certainly have an interest in regulating housing, we aren't convinced that this local interest outweighs the state interest in regulating common interest communities so much so that we can classify regulating condominiums as a purely local matter. *See Ibarra*, 62 P.3d at 162. For one thing, we aren't aware of any case saying that the regulation of common interest

communities is traditionally a matter of purely local concern. True, as the Town points out, we have typically categorized zoning-related matters as local for purposes of article XX, section 6. *See Securcare Self Storage*, 10 P.3d at 1247. However, there is also a clear statewide interest in regulating common interest communities. As explained, the legislature declared such a statewide interest, and there is an interest in ensuring that local ordinances don't have a strong extra-territorial impact on the housing market. Thus, although there is some local interest in regulating housing, to designate the regulation of common interest communities as traditionally a matter of purely local concern "fails to capture the sweep of this ordinance's impact upon state" activity in regulating common interest communities. *See Ibarra*, 62 P.3d at 162 (classifying a matter as traditionally one of purely local concern didn't capture the sweep of the ordinance's impact on state interests).

### d. The Constitution

¶ 41    The constitution does not assign the issue of occupancy restrictions, the regulation of common interest communities and

condominiums, or economic regulation generally either to the state or to localities. *See* Colo. Const. art. XX, § 6.

### e. Considering These Factors, the Matter is one of Mixed State and Local Concern

¶ 42     Although we acknowledge that there is a local interest in regulating common interest communities, that interest is insufficient to make this matter purely local since there are also strong statewide interests in maintaining the uniform regulation of common interest communities and avoiding the potential for an extra-territorial ripple effect. *See Ibarra*, 62 P.3d at 156 (citing *City of Commerce City*, 40 P.3d at 1280) (even where there is a local concern, the matter can still be classified as a matter of statewide concern). Thus, because the regulation of common interest communities implicates both state and local interests, we find that the matter is one of mixed state and local concern. *See Telluride*, 3 P.3d at 37 (similarly classifying rent control regulation as mixed).

### 2. Because the Ordinance Conflicts with the CCIOA, the CCIOA Preempts it

¶ 43     Having determined that this matter is one of mixed state and local concern, we next turn to whether there is a conflict between the ordinance and the CCIOA.

¶ 44    The CCIOA and an ordinance can coexist if there is no conflict between them.  *See Ibarra*, 62 P.3d at 155.  In the event of a conflict, however, the CCIOA supersedes the ordinance.  *Webb*, ¶ 16.

¶ 45    Here, there is a direct conflict between the ordinance and the CCIOA.  The ordinance discriminates against the condominium form of ownership, which is prohibited by the CCIOA.  Thus, the CCIOA preempts the Town's ordinance.

¶ 46    Because the CCIOA preempts the ordinance, the Town's argument that the CCIOA cannot apply because it is a home-rule municipality fails.

## V.    Attorney Fees on Appeal

¶ 47    The Association seeks recovery of legal fees and costs incurred in defending this appeal and the prior appeal that was dismissed for lack of jurisdiction.

¶ 48    Section 38-33.3-123(1)(c), C.R.S. 2020, states that "[i]n any civil action to enforce or defend the provisions of this article or of the declaration, bylaws, articles, or rules and regulations, the court shall award reasonable attorney fees, costs, and costs of collection to the prevailing party."  The provision entitles the prevailing party

to attorney fees and costs for each claim and for "that aspect of [the] case." *Giguere*, 155 P.3d at 472 (citation omitted). Here, the Association was the prevailing party and thus is entitled to attorney fees encompassing litigation as it relates to these claims, including this appeal and the previous appeal.[4]

¶ 49    However, because the trial court is in a better position to determine the amount of reasonable fees incurred by the Association on appeal, we exercise our discretion to remand the case for further proceedings on that issue. *See* C.A.R. 39.1.

VI.    Conclusion

¶ 50    The judgment is affirmed, and the case is remanded with directions.

---

[4] We note the Town's unsupported assertion that, because it explicitly stated in its cross-claim that the cross-claim "was not being brought under [the] CCIOA," the CCIOA doesn't apply to this case and consequently cannot provide support for an award of attorney fees. However, we agree with the Association that the mere fact that the Town isn't asserting a claim under the CCIOA doesn't preclude its applicability, including the provisions relating to attorney fees. *See* § 38-33.3-123(1)(c), C.R.S. 2020. Indeed, the Town doesn't direct us to any legal authority supporting its argument. *See* C.A.R. 28(a)(7)(B); *People v. Simpson*, 93 P.3d 551, 555 (Colo. App. 2003) (declining to address "a bald legal proposition" not developed with supporting argument).

26

JUDGE ROMÁN and JUDGE LIPINSKY concur.